

# EXHIBIT A

Pl.'s Compl. and Exhibits
(filed Aug. 3, 2020)

Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue
Suite 2100
Chicago, Illinois 60611
(312) 840-7000
http://www.burkelaw.com

August 3, 2020
Civil Action No.

Civil Department
Lawrence Essex Superior Court
43 Appleton St.
Lawrence, MA 01840

Re. Adam P. Beck, M.D. (Plaintiff)
102 Osgood Street
Andover, MA 01810
        v.
Vision Service Plan Insurance Company (Defendant)
3333 Quality Drive  Rancho Cordova, California 95670

and

Geoffrey Reynolds, O.D.  (Defendant)

95-1249 Meheula Pkwy #137

Mililani, Hawaii 96789

Dear Sir/Madam:

Enclosed for filing, please find the following:

    COMPLAINT FOR DAMAGES WITH JURY DEMAND

Very truly yours,

Adam Beck

COMMONWEALTH        ESSEX, SS  SUPERIOR COURT

OF MASSACHUSETTS      NO.

| | |
|---|---|
| Adam P. Beck, M.D., | ) |
| Plaintiff | ) |
| v. | ) |
| VISION SERVICE PLAN | ) |
| INSURANCE COMPANY, | ) |
| GEOFFREY REYNOLDS, O.D. | ) |
| Defendants | ) |

## COMPLAINT FOR DAMAGES WITH JURY DEMAND

Plaintiff Dr. Adam P. Beck, M.D. brings this complaint against
Defendants for unlawfully refusing to pay for services rendered under a
network policy agreement (hereinafter the "Agreement") and
terminating Plaintiff Adam P. Beck, M.D. from the Agreement with
defendants.

## PARTIES

1. The Plaintiff Adam P. Beck, M.D. (hereinafter "Beck") is an
individual having a usual place of residence in Andover, Essex County,
Massachusetts.

2. The Plaintiff Beck owns and operates an Ophthalmology Professional Corporation, Adam P. Beck, M.D., P.C., which is a corporation having a usual place of business in Lawrence, Essex County, Massachusetts.

3. The Defendant VISION SERVICE PLAN INSURANCE COMPANY (hereinafter "VSP") is an insurance company operating under the laws of the Commonwealth of Massachusetts and registered under the Secretary of State's website having a substantial place of business at 3333 Quality Drive Rancho Cordova, California 95670 and a registered agent at 529 Main Street, Suite 500 Charlestown, Massachusetts.

4. The Defendant GEOFFREY REYNOLDS (hereinafter "REYNOLDS") is an Optometrist operating as an agent of VSP and who is employed by VSP as its medical reviewer and with a usual place of business at 95-1249 Meheula Pkwy #137 Mililani, Hawaii 96789.


## JURISDICTION AND VENUE


5. Personal jurisdiction is predicated against all Defendants as they are either all doing business in this Commonwealth directly or indirectly, and VSP is incorporated in Massachusetts, transacts business in the Commonwealth, contracts to supply services and things in the Commonwealth, have caused tortious injury to Beck, contract to insure people in this Commonwealth at the time of contracting, and Reynolds operates as an agent of VSP and is responsible for the decision making authority with respect to termination of a provider, all under the Massachusetts long-arm statute, M.G.L. ch. 233 Section 3.

6. This action involves a controversy exceeding fifty thousand dollars ($50,000.00).

# FACTS COMMON TO ALL COUNTS

7. By occupation Beck is an ophthalmologist licensed under the Commonwealth of Massachusetts.

8. Beck is the owner of ADAM P. BECK, M.D., P.C.

9. Beck entered into a Network Doctor Agreement for Beck to provide ophthalmology services to VSP's members ("The Agreement") with the defendants on or about August 22, 2016. The Agreement itself was a contract of adhesion in which Defendants provided no ability for Beck tp negotiate the terms.

10. A copy of The Agreement is attached hereto.

11. The Agreement provides coverage for Beck to see VSP's patients and be reimbursed for the services rendered.   Since its inception, VSP has repeatedly underpaid or not paid for Beck's services rendered.

12. On or about July 29, 2019, Beck communicated with Jeff Vellenga from VSP about a disciplinary Massachusetts Board of Registration in Medicine Consent Order in which he had entered. The consent order when read carefully allows Beck to continue to perform the procedures in question.

13. The executed Massachusetts Consent order was received by Beck from the Massachusetts Board of Registration in Medicine on July 29, 2019. Beck was and is still allowed to perform the procedures in question.

14. On August 1, 2019, Beck submitted initial communication of the Consent order to VSP.

15. Beck submitted further correspondence to clarify in early August 2019.

16. Beck was initially terminated by VSP on August 9, 2019.

17. Beck then communicated with Melanie Trammell from VSP's credentialing department and requested an appeal on or about September 3, 2019.

18. On October 8, 2019, VSP communicated to Beck again via a letter from Ms. Noguchi from VSP's credentialing department asking for clarification on a settlement for patient David Smalley for which Beck replied on October 15, 2019.

19. No mail, certified letter, or email was then sent prior to Beck's message to Ms. Myers from VSP on January 29, 2020 after his office received notification that his credentialing would be terminated on February 6, 2020 when his office staff was calling inquiring about vision services on a patient. VSP claims that a letter dated November 6, 2019 was faxed and sent certified mail. Beck never received such notice until on or about January 29, 2020.

20. Upon receiving the notification of termination, Beck immediately asserted his rights to appeal the termination decision on February 6, 2020. In the November 6, 2019 letter, VSP claimed the reason for termination to be "malpractice issues" and that this termination will be reported to the National Practitioner Data Bank ("NPDB"). In February 6, 2020 response letter, Beck asserted M.G.L ch. 93a claims revolving around VSP's unfair and deceptive practices.

21. Beck then received the notice of termination on April 8, 2020.

22. VSP's Provider Manual states as follows:

"A written determination ("PDR Determination") stating the **pertinent facts** (emphasis added) and explaining the reasons for the determination shall be issued within forty-five (45) working days after the receipt of the Contest/Denial or amended Contest/Denial. A PDR Determination shall be final unless the provider requests a Peer Review Hearing as more fully set forth below."

23. The reason for Beck's termination then shifted by VSP to Beck being falsely accused in the April 8, 2020 VSP letter by Reynolds of not maintaining his license in good standing.

24. Beck has complied with the Massachusetts and New Hampshire Consent orders.

25. Beck was subject to a simple reprimand and what was termed a modification by New Hampshire, although careful reading of the

language shows any reader that there is no restriction of any privilege and also shows that these actions are what is required on any patient.

25. Beck was further accused by Reynolds and VSP of concealing a Massachusetts Consent Agreement when in fact he was in communication with VSP's Jeff Vellenga the very same day the Massachusetts Consent order was executed.

26. No concealment of material facts by not reporting the Massachusetts Consent Agreement therefore occurred as Beck was in communication the very same day (July 29, 2019) with VSP that he received the executed Consent agreement.

27. In its April 8, 2020 letter, VSP and Reynolds also negligently bases its decision on four medical malpractice cases.

28. Two of the cases have been declared a nonsuits after successful motions for nonsuit by the New Hampshire Superior Court.

29. The nonsuits were reported by Beck to VSP's internal counsel, Nicole Wasylkiw, on or about April 20, 2020. When presented with this information proving VSP's letter by Reynolds dated April 8, 2020 was factually incorrect, VSP and Reynolds then chose to repeatedly ignore the facts surrounding their decision to terminate Beck maintained their position of terminating Beck. Moreover, despite there being one malpractice verdict and a subsequent settlement on the advice of Beck's counsel, VSP through its internal counsel reported a "pattern of quality of care issues. This is not a one off case."

30. The decision by VSP is faulty and in effect is based on one case and a settlement of a second case which was recommended by counsel so as not to have a potentially public case once again. Moreover, there are several local providers with multiple malpractice settlements who have not been terminated from VSP.

31. Beck improperly has not been afforded an opportunity to appeal VSP's termination decision through its own Agreement which offers an on-person panel hearing.

32. The termination process has been faulty from the first correspondence in August 2019.

33. The decision was based on incomplete data and/or data that was overlooked by the reviewer, Reynolds.

34. Beck was never informed by VSP of its recommendation to terminate its affiliation with Beck in November 2019.

35. The questions asked in the correspondence from VSP were both overly broad and did not indicate there were specific issues that needed to be addressed in the conclusion for termination on April 8, 2020.

36. No clarification was ever asked by the reviewer, Dr. Reynolds.

37. The review was cursory and the decision making by the defendants was arbitrary and capricious. Moreover, when the faulty fact finding was addressed to VSP's counsel, it was repeatedly ignored by VSP and Reynolds.

38. The pertinent facts in this case were consistently overlooked, not clarified by VSP, misinterpreted, or grossly ignored.

39. VSP and Reynold's actions can only be considered arbitrary and capricious and would not be able to withstand a Motion for Injunctive and/or Declaratory Relief brought on behalf of Beck. Moreover, Reynolds has operated outside his scope of optometry practice in his report of Beck, an ophthalmologist with a specialty in vitreo-retinal surgery.

40. Because of this faulty review and failure to adhere to its own regulations and the principle of good faith and fair dealing, Beck has not been afforded a fair and impartial review.

41. On or about April 13, 2020, Beck mailed and emailed VSP a formal M.G.L. ch. 93a letter a copy of which is attached.

42. VSP acknowledged receipt of this letter via an email from Melanie Trammell on April 14, 2020 and again on July 31, 2020.

43. No substantive response has been made by VSP to date for the February 6, 2020 letter, the April 9, 2020 letter, and a follow-up June 26, 2020 letter. The indirect response to the M.G.L. ch. 93a letters by VSP's in-house counsel are attached.

44. Beck receives many patients through VSP and follow up for medical conditions from these patients. The damages resulting from this case are not just the loss of revenue from not seeing VSP patients and selling eyeglasses, but the subsequent loss of patients with actual medical conditions that require surgery or treatment and the loss of credentialing with other insurance companies and hospitals from a NPDB report.

45. Termination of Beck, in conjunction with a public National Practitioner Data Bank report, will certainly lead to further damages with credentialing with other insurers and hospitals.

46. Any such report would be defamatory to Beck and his business.

47. In its Agreement with Beck, the following is stated regarding termination of a provider.

If VSP intends to terminate a Provider by removing them from the network and/or terminating their ability to submit claims, the Provider may remain on the VSP doctor network ("**Network**") and/or submit claims until a written determination of the dispute is made, as more fully set forth below. However, VSP, in its sole and absolute discretion, may terminate the Provider from the network and/or the right to submit claims immediately if there is reasonable cause to conclude any of the following:

- Provider's conduct presents a past or present risk of harm to any VSP patient ("**Member**");
- Provider's conduct presents an unacceptable quality of care issue to any Member;
- Provider's conduct constitutes intentional fraud, misrepresentation or gross indifference in the submission of true and accurate claims;
- Provider's conduct constitutes incompetence or willful indifference in treating a patient's visual or other health care needs;
- Provider's license or other lawful authority to practice has expired, been terminated or is in any other form of suspension, probation or conditional status;
- Provider has refused to allow an audit of his/her practice(s); or
- Other reasonable cause exists.

48. None of the causes of termination apply to Beck. Moreover, nowhere in the Agreement is a restriction on privilege listed as a cause for termination.

49. Beck has received an acceptable practice audit by both the Coding Network and Dr. John Lee, M.D.

50. In its Agreement with Beck, the following is stated with respect to an appeal of its termination:

> • For a Notice regarding any other dispute or challenge covered by this DRP, the Provider shall send the Contest/Denial within 365 calendar days of the Notice. However, VSP may impose an effective date of action within a Notice (other than one regarding a Fraud and Abuse Claim Dispute) that is less than the 365 calendar days if consistent with applicable law.

51. Beck has not been afforded the 365 day notice requirement for review by VSP per the Agreement and in fact, VSP has rushed its decision to pressure Beck into a hearing which is not procedurally correct in its own Agreement with Beck or have Beck terminated and reported to the National Practitioner Data Bank. Furthermore, Beck was to be provided a 15 working day period to request a Peer Review Hearing.

52. In effect, VSP through Ms. Trammell has stated on July 27, 2020 that if Beck does not agree to sign a notice for appeal by August 3, 2020, it will terminate Beck and report the findings to the National Practitioner Data Bank.

53. In its Agreement with Beck, the following is stated with respect to an appeal of its termination:

## III. PEER REVIEW HEARING

**Overview** Providers unsatisfied with the result of the PDR may request a Peer Review Hearing ("**Hearing**") comprised of a panel of practicing

Network Doctors. A request for or participation in a Hearing does not waive the Provider's future right to request binding arbitration.

**Peer Review Hearing Panel** The Chair of the Panel ("**Panel Chair**"), who is appointed by the Chairman of the Board of Directors, shall appoint two (2) optometrists who are also VSP network doctors to serve on the Peer Review Hearing Panel ("**Panel**"). The Panel Chair shall be in charge of the Hearing and shall make all determinations of the procedural conduct of the Hearing. No Panel member shall be in direct economic competition with the affected Provider, and no Panel member shall be in a position to gain direct financial benefit from the outcome of the Hearing. The fact that Panel members and Provider are on the same Provider panel or network shall not, standing alone, constitute direct economic competition within the meaning of this paragraph. <u>Panel members shall be provided copies of all documents to be considered at the Hearing and may attend the Hearing in-person or by telephone conference.</u> (emphasis added)

**Request for Peer Review Hearing** Providers requesting a Hearing must submit a Peer Review Hearing Request ("**Request**") within fifteen (15) working days of receipt of the PDR Determination. <u>The request must include whether the Provider intends to attend the Hearing in person or via teleconference, and if Provider will have Counsel in attendance.</u> (emphasis added)

**Court Reporter** Either party, or the Panel, may arrange for a stenographic record of the proceeding to be kept by an independent certified court reporter ("**Court Reporter**"). The party requesting the use of a Court Reporter shall pay the expense of the original certified transcript ("**Transcript**"). The opposing party and the Panel shall be permitted to purchase a copy of the Transcript from the Court Reporter and shall only be required to pay the Court Reporter's usual and customary fee for a copy of the Transcript. If the Panel desires the use of a Court Reporter, the Court Reporter costs, including the costs of the

transcript(s), shall be equally shared by the parties. **The Court Reporter shall be physically present at the Hearing**. **(emphasis added)** With the exception of personal notes of the Hearing by the parties and their counsel, there shall be no audio, video or other recording of the Hearing of any kind.

**Peer Review
Hearing**

A. *Attendance/Response.* Provider and VSP shall attend the Hearing as designated and shall respond fully and completely, under oath, to all questions from members of the Panel. **Either party may request to attend the Hearing in-person or by telephone conference. (emphasis added)**

54. On or about July 9, 2020 Beck submitted further information for VSP's review, including expert complaints about specific testimony that was falsely given against Beck and his cases. Beck further requested an in-person review to be completed once it is safe to travel cross-country following the end of the COVID-19 crisis.

55. VSP and Reynolds have refused to review the information submitted, along with other information submitted and have refused an in-person hearing, a direct violation of their own Agreement.

56. On or about July 27, 2020, Beck received a response from Ms. Trammell indicating the following:

"Your request for an in person hearing is noted. However, due to the current guidance on social distancing from the CDC and the State of California, as well as VSP policy, we are not holding in person meetings / hearings out of concern for the safety of everyone involved. This, combined with the requirement of the DRP to maintain a fast, fair and cost effective dispute resolution mechanism means that we will not be able to accommodate your request. Because we are prevented from holding an in person hearing, the Peer Review hearing will be

conducted via video conference. We used the video conferencing tool in our most recent hearings and they were fair and comprehensive. Many Courts and arbitrations are using video conferencing as it meets the fundamental fairness requirements of viewing and questioning witnesses and assuring that an aggrieved party the right to be heard."

57. The July 27, 2020 correspondence from Ms. Trammell further states:

"Instead, I receive a hundreds of pages of new documentation, in multiple formats paired with unrealistic demands. Due to your multiple documentation submissions to me and Nicole Wasylkiw, you will need to resubmit the documentation that you would like to accompany your acknowledgment and request form for a Peer Review hearing. While case records can become voluminous, we will not allow parties to overburden and confuse panel members with duplication. It is not VSP's burden to do your work for you. You will have 15 days after I acknowledge receipt of the attached Form to submit your documentation. Your submittal of documents may only include new material and is not a resubmittal of that which you provided in your original written submission or the material which you provided Ms. Wasylkiw on April 29th. These documents are already a part of the record that will be submitted to the Hearing Panel. Per the DRP, the admission of these additional documents is at the sole discretion of the panel chair.

I respectfully require that you sign the acknowledgment Form and indicate your election for Peer Review or Arbitration on the attached Form and return it to me no later than **August 3, 2020**. Pursuant to the DRP, should the Form not be timely received, VSP will consider this matter final and complete and will proceed with your network

termination and any necessary agency reporting as may be required by law.

Regards,

Mel Trammell"

58. As of March 13, 2020, Massachusetts and the rest of the country have entered a national crisis due to COVID-19, which prevent safe travel across country and to California where a peer hearing or arbitration would occur.

59. The Agreement itself indicates that Beck has the right to an in-person hearing and for a Court reporter to be physically present at a hearing.

60. This request for a in-person hearing has been denied by the Defendants in Ms. Trammell's July 27, 2020 letter.

61. VSP has never formally responded it Beck's 93A letter attached to this Complaint, nor to any of the follow-up letters to Beck's initial 93A demand.

62. It is patently unfair that one adverse civil judgment and subsequent Settlement Agreement should lead to my termination from the VSP Network.

63. VSP has therefore failed to comply with its own Rules and Regulations. Moreover, the Agreement itself does not prohibit the litigation of a M.G.L. ch. 93A claim in a Massachusetts Court.

64. The termination process under the Agreement was never followed nor was a factually correct reason set forth as to Beck's termination.

65. The termination occurred in an arbitrary and capricious manner and further supporting documentation was repeatedly ignored by Reynolds and VSP.

66. Reynolds and VSP made many incorrect and libelous statements in its April 8, 2020 letter to Beck, including the following, "The case

reviewer concludes that you did breach the Network Doctor Agreement by not maintaining your license in good standing. The case reviewer further concludes that the evidence shows you concealed material facts regarding your licensure from VSP in failing to report that your medical license was in fact restricted by the Massachusetts State Board. The Case Reviewer concludes that you have shown a pattern of questionable case and decision making as evidenced by the multiple malpractice claims against you by a variety of plaintiffs in the recent past. It is reasonable to believe that VSP and its members could be at risk. You will be able to reapply to the VSP Doctor Network if your medical licensure are returned to good standing without condition or restriction, however your reapplication will not guarantee reinstatement. Your Network termination will be reported to the National Practitioner Data Dank (NPDB) as required by law."

67. VSP advertises itself on its website as "VSP is widely regarded as the best vision insurance you can buy."

68. Dr. Beck and Dr. Beck, P.C. have worked to treat the underserved population of Lawrence, Massachusetts for many years now, including being the only local provider that stayed open during the COVID-19 crisis.

69. With the COVID-19 crisis, Dr. Beck has been asked to perform duties by the hospitals he is affiliated with outside of his clinical specialty.

He could not perform such duties without the ability to see these patients and write prescriptions for VSP patients.

70. He one of the very few ophthalmologists still seeing emergent patients.

71. Before his termination from VSP, Dr. Beck routinely saw VSP patients and was either underpaid or not paid for services rendered, leading to a recurring unjust enrichment to VSP.

72. It is poor medicine and unfair to the patients to continue to have Dr. Beck be on the front lines of a state and national crisis without the ability to see these patients without limitation imposed by VSP.

73. Dr. Beck is on staff at Holy Family Hospital, Lawrence General Hospital, Lowell General Hospital, and Anna Jacques Hospital.

74. Moreover, since the VSP decision in July 2019, two of the cases in which VSP made their decision, Kelley v. Beck  and Morrow v. Beck, have been entered as nonsuits in the New Hampshire Superior Court.

75. On or about August 1, 2019 and October 1, 2019, well after VSP had elected to terminate Beck from its plan, VSP performed multiple queries with the National Practitioner Data Bank (hereinafter the "NPDB.")

76. Under the NPDB guidelines and Title IV, Section 1921, Section 1128E, a health plan with no affiliation to a provider is not entitled to a query of a provider.

77. VSP knows that if it submits a report to the NPDB, it will create a cascade effect with other insurance companies and hospitals leading to the termination of Beck.

78. Beck has never been accused of causing any negligence on a VSP member. VSP has merely threatened to file a report based on reports presented to it.

VSP is obligated to pay Dr. Beck for all damages, including attorneys' fees, compensatory fees' and treble damages arising from VSP's breach of contract, breach of the implied covenant of good faith, invasion of privacy, and M.G.L. ch. 93A claims.

79. As a result of VSP's breach in the Agreement and failure to allow Beck an in-person hearing and with a Court reporter physically present

at the hearing, Beck has no other recourse in this case but to file in a Massachusetts Court. Moreover, VSP and Reynolds through VSP's counsel have repeatedly refused to consider new supportive material by Beck to reconsider their position to terminate Beck.

## COUNT I: EMERGENCY TRO AND PRELIMINARY INJUNCTION

80. Beck adopts and repeats the aforementioned allegations of this Claim as though fully set forth herein.

81. On or about July 29, 2019, VSP issued a termination of Beck's network participation.

82. On April 8, 2020 VSP and Reynolds issued a statement upholding their original decision to terminate Beck's participation in the Agreement.

83. As a result of the termination, Beck will be reported to the National Practitioner Data Bank as an adverse event.

84. This reporting to the National Practitioner Data Bank will have immediate and devastating consequences on Beck's ability to see his VSP patients, which constitute a large part of his practice, as well as other insurance plans and hospital credentialing.

85. No other factually correct reasons for termination were given to Beck, nor do any applicable reasons exist on the Massachusetts website as Beck has a medical license which is neither suspended or revoked.

86. Because no reasons applied to preclude coverage, VSP owed Beck a provide coverage of him as a covered "in network" provider going forward.

87. The damages here include civil penalties, attorneys' fees, costs, and, in some cases, prejudgment interest.

88. Because of its failure to abide by the dispute resolution process in the Agreement and the breach of the implied covenant of good faith and fair dealing, VSP owes Beck a duty to allow him to continue to see VSP patients and be reimbursed, without any adverse reporting to the National Practitioner Data Bank and requests that this Court enter an order:

A. Declaring that VSP has owed and continues to owe a duty to allow Beck to continue to see VSP patients and be reimbursed, without any adverse reporting to the National Practitioner Data Bank,

B. Order mandatory mediation pursuant to The Agreement which is in Massachusetts based on the COVID-19 limitations to travel,

C. For such other and further relief this Court deems just and equitable, including, but not limited to ordering to continue allow Beck to see VSP's patients in the service agreement, and money damages for the breach of contract.

D. Beck is asking for a Court order on this motion, but is entitled to a trial by jury on all other issues so triable; and

E. For such other and further relief this Court deems just and equitable.


COUNT II

BREACH OF CONTRACT AGAINST ALL DEFENDANTS

89. Dr. Beck repeats and realleges the allegations set forth in paragraphs above and incorporates the same by reference herein.

90. All Defendants breached their duties under The Agreement by refusing to pay the full amount claims rendered under The Agreement and terminating the Plaintiff, without offering a resolution for an in-person hearing as allowed under the Agreement, as well as other specific instances in The Agreement outlined.

91. As a direct and proximate result of all defendants' breach of contract under The Agreement, all Defendants caused damages to Dr. Beck.

COUNT III

VIOLATION OF M.G.L. C. 93A AND C. 176D AGAINST ALL DEFENDANTS

92. Plaintiff repeats and realleges the allegations set forth in paragraphs above and incorporates the same by reference herein.

93. At all times material hereto, defendants been engaged in trade or commerce within the Commonwealth of Massachusetts as those terms are defined under M.G.L. c. 93A.

94. VSP is an insurance company that controls the activities of its members and contracted providers with adhesion contracts.

95. VSP advertises itself to the public and to providers as set forth above. Beck relied on the advertising of VSP when he entered into the Agreement.

96. VSP only offered a cursory response to Beck's 93a demand letter of April 8, 2020.

97. Furthermore, VSP has a history of parsimonious claim denials or underpayments to its providers.

98. VSP has repeatedly withheld or underpaid payments to Dr. Beck and Adam P. Beck, M.D., P.C. in order to make a profit.

99. VSP further terminated Dr. Beck in order to drive patients effectively to providers who cost less.

100. VSP can track financial data pertaining to claims, and to review specific claims reserves attributable to a particular insured through data bases that can reviewed through relational databases.

101. Through discovery, it will be proven that VSP used financial reasons in its decision to terminate Dr. Beck and Adam P. Beck, M.D., P.C.

102. On February 6, 2020, April 9, 2020, and June 26, 2020, Dr. Beck sent to VSP a "Demand Letter" seeking relief under M.G.L. c. 93A. To date, VSP has made no attempt to address many of the issues raised in the letters outside of generally stating the credentialing committee denies my request for reinstatement.

103. VSP repeatedly has had a pecuniary interest in terminating Dr. Beck from its network of providers.

104. In his termination letter, Reynolds made factually false allegations about Beck and then refused to reconsider his position when refuting evidence was presented to him.

105. Asserting that VSP's misrepresentation of the facts are evidence of bad-faith insurance practices.

106. All defendants engaged in deceptive acts and practices, substantially within the Commonwealth of Massachusetts, that violated both G.L. c. 93A and c. 176D.

107. The unfair and deceptive acts and practices of the defendants were performed willingly and knowingly.

108. The defendants materially violated G.L. c. 93A and c. 176D by its oppressive acts and omissions, including but not limited to failing to reconcile its decision with the medical evidence and the terms of The Agreement.

109. As a direct and proximate result of the acts and omissions of the defendants, particularly their refusal to pay for claims submitted by Dr. Beck and his termination from The Agreement, he suffered damages.

COUNT IV

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

110. Dr. Beck repeats and realleges the allegations set forth above and incorporates the same by reference herein.

111. All defendants breached the covenant of good faith and fair dealing implied in the terms of the The Agreement and under the laws of the Commonwealth of Massachusetts and other jurisdictions, if applicable, by failing to repeatedly review the facts of this case, the failure to correct its position when shown unequivocally that their facts upon which to terminate Beck were incorrect, and then failing to offer Dr. Beck an in-person hearing with appropriate time to explain the issues in his credentialing and denying payments to Dr. Beck as he reasonably expected.

112. As a direct and proximate result of the acts and omissions of all defendants in refusing to pay benefits to Dr. Beck and Dr. Beck, P.C. and by unfairly terminating him from The Agreement, he suffered damages.

## COUNT V

## INVASION OF PRIVACY

113. Dr. Beck repeats and realleges the allegations set forth above and incorporates the same by reference herein.

114. Plaintiffs have a reasonable expectation that they will not undergo a NPDB query following termination from The Agreement.

115. VSP had no affiliation with Plaintiffs when it performed the query on multiple occasions.

116. The only reason for VSP to perform such a query was to try to tailor a reason for its defense of the termination of July 31, 2019.

117. As a direct and proximate result of the acts and omissions of all defendants in refusing to pay benefits to Dr. Beck and by unfairly terminating him from The Agreement, he suffered damages.

## COUNT VI

## RESTITUTION AND UNJUST ENRICHMENT

118. Dr. Beck repeats and realleges the allegations set forth above and incorporates the same by reference herein.

119. Prior to termination by VSP, and post termination by VSP, Dr. Beck will be providing services to VSP's members without reimbursement as he remains locally one of the few providers open during COVID-19.. This will give VSP the benefit of receiving free services, without having to pay for Dr. Beck's work.

120. Dr. Beck will continue to suffer damages going forward as he is required to see VSP's patients, despite VSP stating that the patients can be referred elsewhere. Beck has also been injured by VSP's repeated under or non paying of services provided by Beck under the Agreement.

121. As a direct and proximate result of the acts and omissions of all defendants in refusing to pay benefits to Dr. Beck and by unfairly terminating him from The Agreement and then VSP keeping the money owed to Dr. Beck and Dr. Beck, P.C., the Plaintiff's suffered damages.

## COUNT VII

## NEGLIGENCE

122. Dr. Beck repeats and realleges the allegations set forth above and incorporates the same by reference herein.

123. In its review, VSP and Reynolds had a duty to diligently review the facts of Beck's credentialing.

124. VSP and Reynolds only provided a cursory review and based its decision to terminate, in-part, on factually incorrect information.

125. The standard of care would have required VSP and Reynolds to clarify any questionable information prior to rendering a decision to terminate.

126. When Beck corrected this information, VSP and Reynolds ignored the new information presented.

127. The standard of care of a diligent review was breached in several instances by VSP and Reynolds.

128. This breach in the standard of care for an effective and diligent review was then further breached when VSP has effectively eliminated any possibility for an in-person hearing.

129. The breach in the standard of care is the proximate cause of damages suffered and continued to be suffered by Beck.


COUNT VIII

TORTIOUS INTERFERENCE OF CONTRACTUAL RELATIONS

130. Dr. Beck repeats and realleges the allegations set forth above and incorporates the same by reference herein.

131. VSP and Reynolds only provided a cursory review and based its decision to terminate, in-part, on factually incorrect information. Reynolds, through his own wrongdoing, has lead to VSP's decision to terminate Beck and has interfered with Beck's ability to provide services under the Agreement.

132.  In performing a cursory and factually incorrect review, VSP and Reynolds have interfered with Beck's ability to contract with VSP and its members.

133. As a follow-up domino effect, in performing a cursory and factually incorrect review, VSP and Reynolds have interfered with Beck's ability to contract with other insurers and their members  and hospitals as a NPDB report will lead to a domino effect of other insurers terminating their affiliation with Beck.

134.  The standard of care of a diligent review was breached in several instances by VSP and Reynolds and this has lead to an interference with Beck to perform his obligations under this Agreement and subsequently other Agreements.

135.  As a direct and proximate result of all defendants' actions, all Defendants caused damages to Dr. Beck.


COUNT IX

LIBEL AND LIBEL PER SE

136.  Dr. Beck repeats and realleges the allegations set forth above and incorporates the same by reference herein.

137.  On or about April 8, 2020, VSP and Reynolds falsely stated "The case reviewer concludes that you did breach the Network Doctor Agreement by not maintaining your license in good standing."

138.  On or about April 8, 2020, VSP and Reynolds falsely stated, " The case reviewer further concludes that the evidence shows you concealed material facts regarding your licensure from VSP in failing to report that your medical license was in fact restricted by the Massachusetts State Board."

139. On or about April 8, 2020, VSP and Reynolds falsely stated, "The Case Reviewer concludes that you have shown a pattern of questionable case and decision making as evidenced by the multiple malpractice claims against you by a variety of plaintiffs in the recent past. It is reasonable to believe that VSP and its members could be at risk."

140. On or about April 8, 2020, VSP and Reynolds stated, "You will be able to reapply to the VSP Doctor Network if your medical licensure are returned to good standing without condition or restriction, however your reapplication will not guarantee reinstatement."

141. On or about April 8, 2020, VSP and Reynolds stated, "Your Network termination will be reported to the National Practitioner Data Dank (NPDB) as required by law." He further incorrectly stated, "Upon review of these licensing restrictions, the Credentialing Committee also discovered several significant malpractice suits related to your practice of medicine."

142. In threatening to communicate its termination to the NPDB, VSP and Reynolds base their decision on false information such as Beck attempting to conceal material facts, Beck being a risk to patients, and Beck's license not being in good standing, with condition or restriction.

143. In his statement to Beck, Reynolds and VSP incorrectly indicates that Beck has "restrictions" and that the "record identifies four (4) separate malpractice claims filed in 2017-2019 related to patient treatment from 2011through 2017 involving the quality of care to your patients."

144. Careful reading of the consent order indicates Beck is still allowed to perform the procedures in question.

145. The Agreement does not mention the word "restriction." The first time this word is mentioned is in Reynolds letter dated April 8, 2020.

146. Beck does not and had not performed the procedures in question in over eight years as they have become less useful with the advent of new technology for treatment of macular degeneration.

147. VSP insures optometrists and ophthalmologists for eyeglass services, such as routine care and refractions.

148. VSP does not insure members for anything beyond routine care.

149. VSP does not insure members for any of the treatments provided by Beck in question.

150. A report to the NPDB will be detrimental to Beck and his business, leading to loss of affiliation with other insurers and hospitals, all which have been based on a report from the NPDB itself to VSP. In effect, VSP is taking a report and escalating the report making the appearance that Beck has somehow harmed its members.

151. Moreover, two claims were declared nonsuits by the New Hampshire Superior Court.

152. As a result of the defendants negligent and cursory review of the material, and the publication of misinformation related to Beck, he has suffered damages.


COUNT X

FRAUD IN THE INDUCEMENT

153. Dr. Beck repeats and realleges the allegations set forth above and incorporates the same by reference herein.

154. VSP and Reynolds entered into the Agreement with Beck knowing that it had a dispute resolution process.

155.  VSP and Reynolds refused an in-person hearing regarding the termination of Beck, a hearing that was clearly outlined in the dispute resolution process.

156.  The representation by VSP and Reynolds that there would be a fair in-person hearing would there ever be a dispute in the Agreement persuaded Beck to agree to the Agreement.  The Agreement in fact was one of adhesion, it was binary as to Beck signing or not signing.  There was no opportunity to negotiate the terms with respect to a dispute.

157.  Beck relied on the representations outlined in the Agreement.

158.  Beck would not have entered into the Agreement had he known the representations by Reynolds and VSP would not be honored.

159. As a result of these actions, Beck has suffered damages.

COUNT XI

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

160.  Beck realleges the allegations in the foregoing paragraphs and incorporates those allegations by reference as if fully restated herein.

161.  As a result of the above described tortious actions and publication to the NPDB, Beck has suffered loss of his personal and professional reputation, emotional distress, shame, injury to his feelings, in an amount to be determined at trial.

162.  The repeated breaches in evaluating this case correctly was the direct and proximate cause of Beck's damages, for which he continues to suffer humiliation, stress, and emotional distress.

COUNT XII

## DAMAGES

160.  Beck alleges that as a direct and proximate and foreseeable result of the defendants' acts and failure to act on each Count as stated herein, he has suffered the following permanent damages:

A. Personal injuries, severe symptoms, fear and anxiety, emotional distress, loss of enjoyment of life and life's pleasures, economic injuries, and such other losses as are proven at trial – in the past, currently and in the future.

B. Medical and hospital bills and expenses.

C. Costs, expenses, interest, expert witness fees, attorney fees, punitive damages, and lawful interest.

D.  Loss of business and personal income.

E.  Loss of Consortium with Dr. Beck's wife, Bethany Carey, for severe emotional damages upon her, stress, loss of enjoyment of life, fear, anxiety, and depression.

F.  Such other and further damages as proven at trial

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment as follows:

A. Award damages against Defendants, jointly and severally, in an amount which this Court shall determine to be necessary and proper to compensate Plaintiff for his injuries together with pre-judgment interest from the date of breach of contract, post-judgment and reasonable attorneys' fees, and costs.

B. Award treble damages to the Plaintiff against the defendants as allowed under G.L. c. 93A and pre-judgment interest from the date of

breach of the contract, post-judgment interest and costs and reasonable attorneys' fees and all other relief allowed by this statute;

C. Award to the plaintiff punitive damages against the defendants for violating the covenant of good faith and fair dealing and engaging in bad faith insurance practices;

D. Reinstate benefits, including Dr. Beck to VSP's provider panel, plus award pre-judgment interest, post-judgment interest, costs and reasonable attorneys' fees allowed by statute or otherwise; and

E. Award money damages on all Counts against the defendants for loss of business, attorneys' fees, interest, personal injury, restitution for failure to repeatedly deny or underpay on claims submitted, and loss of consortium.

F. In the alternative, for the Court to order mediation in Massachusetts,

G. Award injunctive relief prohibiting allowing VSP to terminate Beck and prohibiting VSP from reporting any action to the National Practitioner Data Bank.

H. For such other and further relief as this Court deems just and proper.


PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES SO TRIABLE


Adam P. Beck, M.D.

Respectfully submitted

_____

Adam Beck, *pro se*

102 Osgood Street

Andover, Massachusetts 01810

## VERIFICATION

I, Adam Beck, have read the foregoing and the contents thereof. The same is true of my knowledge, except as to these matters which are therein alleged on information and belief, ans as to those matters, I believe it to be true.

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed at Lawrence Superior Court.

Dated:  August 3, 2020

Adam P. Beck, M.D.

CERTIFICATE OF SERVICE

I, Adam Beck, hereby certify that I caused a copy of Beck's Claim to be served on:

Vision Service Plan Insurance Company

Attn: Melanie Trammell

Email: Melanie.trammell@vsp.com

3333 Quality Drive

Rancho Cordova, California 95670


Geoffrey Reynolds, O.D.

95-1249 Meheula Pkwy #137

Mililani, Hawaii 96789


via electronic mail and by causing the same to be

deposited in the U.S. Mail, postage prepaid,

on the 3rd day of August, 2020,

By:

_____

Adam Beck, M.D.
102 Osgood St.
Andover, MA 01810
Tel: 978.807.3202
Email: dradambeck2010@gmail.com



New England Eye &
Facial Specialists

August 1, 2019

Dear Sir/Madam,

Thank you for allowing me the opportunity to clarify the recent situations that have occurred. In April 2017, I had a judgment entered against me in New Hampshire. Unfortunately, the Plaintiff in that case was highly sympathetic and the jury completely disregarded two expert witnesses who testified on my behalf that I had completely complied with the applicable standard of care at the time that the treatment had been provided in 2011.

Subsequent to the judgment, in October 2017, I entered into a Settlement Agreement with the New Hampshire Board of Medicine. Specifically, I agreed that I would not use a laser for any extrofoveal choroidal neovascular membrane treatment, nor perform Intravitreal Kenalog injections on any glaucoma patients except in limited circumstances. These were the two procedures that were involved in the jury trial referenced above. Neither of these procedures were part of my current practice as the standard of care in this area has evolved. Further, the modifications in my practices that I agreed to have not in any way impacted my ability to care and treat for any of my patients.

As a result of the publicity stemming from the New Hampshire trial, I had one additional case against me in that jurisdiction that was settled in November 2018. I felt that it was beneficial to settle the case even though I had expert support as to my compliance with the standard of care. I did not want to have the stress of another trial, risk another verdict due to the publicity, and it would have taken weeks away from my practice.

The remaining two situations of restrictions of my privileges by Lowell General Hospital and the MA Board of Registration in Medicine stem from my initial Settlement Agreement with New Hampshire. In both instances, they were reciprocal agreements that I would not perform the two procedures referenced above.

Please let me know if you have any questions and/or concerns regarding the New Hampshire trial or any of the matters that resulted from the jury verdict against me.

Very truly yours,

Adam Beck, M.D.

75 Gilcreast Road, Suite 210    6 Windsor Street    133 Market Street    25 Marston Street, Suite 303    Zero Emerson Place, Suite 2A    10 Market Square
Londonderry, NH 03053    Andover, MA 01810    Lawrence, MA 01852    Lawrence, MA 01841    Boston, MA 02114    Amesbury, MA 01913
PH. 603.421.0095    PH. 978.682.4040    PH. 978.682.4040    PH. 978.208.1725    PH. 617.742.0838    PH. 978.388.9345
FX. 603.421.0093    FX. 978.682.4070    FX. 978.682.4040    PH. 978.208.7598    FX. 617.742.8843    FX. 978.388.1379

w w w . n e e s m d . c o m



November 06, 2019

Adam Beck, MD
New England Eye and Facial Specialists
6 Windsor St
Andover, MA 01810-2605
Via: US Mail

**Re: Notice of Adverse Action regarding Denial at Credentialing Committee**

Dear Dr. Beck:

Conditions which afford you and any derivative associated doctors the ability to participate in VSP's doctor network require that you conform to the terms of the VSP Network Doctor Agreement currently in effect ("NDA"). The VSP Vision Care Credentialing Committee (Committee) recently met on October 23, 2019 to review your status as a participating VSP network doctor. Due to malpractice issues, the Committee has made the decision to remove you from VSP network participation.

The above reasons for adverse action above directly violates your NDA.

Your NDA provides:
*Section D.12(b) Early Termination. Notwithstanding 12.a., either party may terminate this Agreement at any time by giving the other party at least ninety (90) days prior written notice. VSP may also terminate this Agreement immediately if ND (i) fails to remain licensed and/or VSP credentialed, or fails to ensure that its employee doctors are licensed and/or VSP credentialed, (ii) breaches any term and/or condition of this Agreement, or (iii) has engaged/engages in any act of moral turpitude, professional misconduct, criminal or civil wrongdoing which, in VSP's sole discretion, is or may be detrimental to VSP, its Clients and/or VSP Patients. This includes, VSP's evaluation and determination as to the number, nature and severity of any malpractice claim(s) or quality of care issue(s), as determined by VSP's credentialing or other Board-appointed committee. Until such termination is final, ND will continue to perform service in conformity with this Agreement.*

**Timeframe:**
As VSP patients attempt to schedule appointments, they should be advised that after **February 06, 2020** you will no longer provide patient services as a VSP Network Doctor on an in-network basis, nor shall your office be considered a VSP qualified office location. Neither VSP, nor the VSP patient, will be liable for payment of any charges incurred without the VSP patient's prior knowledge of the fact that you are no longer a VSP Network Doctor.

Effective **February 06, 2020,** VSP will no longer accept electronic claims from you on an in- or out-of-network basis. No claims under any of your tax ID numbers will be accepted, nor will any claims that come from your office location be accepted. Paper claims submitted by you for services provided to VSP patients prior to the termination date, may be accepted for a period of up to six (6) months after the termination

1



date in accordance with VSP's policy. Your name will continue to appear on the Network Doctor list only until the next publication, at which time it will be removed.

## Dispute Resolution:

You have the right to contest/deny this Adverse Action Notice surrounding the Committee's decision ("**Notice**") as it relates to your termination from the VSP Doctor Network through VSP's Dispute Resolution Procedure ("**DRP**"), a copy of which is included for your reference;

**If you dispute this Notice,** please submit the attached Notice of Contest/Denial ("**Dispute**") with supporting documentation to **VSP's Dispute Resolution Administrator, Melanie Trammell, at 3333 Quality Drive, MS163, Rancho Cordova, CA 95670** within 365 days of receipt of this letter. You may also choose to submit the dispute electronically to doctordispute@vsp.com. If submitting electronically, please be certain that you are transmitting protected health information according to federal healthcare privacy standards. The Dispute must comply with the requirements included in the attached DRP. Please read it carefully, as this will be your **only opportunity to submit** any and all documentation related to your contest/denial of this notice for this level of dispute resolution. VSP shall then have an opportunity to submit its written response to your contest/denial, of which you will receive a copy if one is submitted. An assigned case reviewer will then send a written determination regarding your dispute within 45 working days of receipt of your Dispute.

If you elect to contest/deny your termination VSP specifically reserves its rights to enforce any and all of the NDA terms, as well as the original terms of this Notice.

If a dispute is not submitted or it is retracted, it shall be deemed that you have accepted this Notice, which shall become final. Your termination shall be effective as of the date identified in this letter. There shall be no further right to appeal your termination under the DRP or to seek any other form of redress.

## Agency Reporting:

Any actions on the part of you, the Provider, that led to VSP's notice or because of the findings in the written determination may be reportable to appropriate licensing and/or enforcement agencies, as well as the National Practitioner Data Bank (**NPDB**). In certain instances, reporting may be legally required.

## Reapplication for Network Status:

Should VSP's notice of adverse action become final, you may re-apply for Network Doctor Participation no less than 12 months from the date of your termination. There is no guarantee, however, that any such application for network doctor participation will be approved.

Cordially,

Jonathan Perlman, M.D.
Medical Director
Enclosures: Provider Dispute Resolution Procedure

2



## NOTICE OF CONTEST/DENIAL

I, the undersigned, hereby acknowledge the receipt and understanding of VSP's Notice of Adverse Action and I agree that in contesting/denying the Notice of Adverse Action, I will abide by the VSP Dispute Resolution Procedure ("**DRP**").  In accordance with the DRP, I hereby dispute the Adverse Action and provide the following information:

Full Name of Provider: _____

Provider Signature: _____ Date: _____

NPI #: _____

Address: _____

Phone Number: _____ E-mail: _____

Legal Counsel Name/Contact (if applicable): _____

☐ If applicable, identify each of the claims from the audit that are disputed and the basis of the contest or denial as to each claim.  Please see the attached "Dispute Resolution Request/Claim Detail" worksheet for reference or use.

☐ A clear written summary explaining the basis upon which you believe that the Adverse Action is not warranted or in error

☐ Any supporting documentation (patient records, invoices etc....) to further support your contest/denial

☐ If applicable, a clear statement of all legal issues being raised and citations to the applicable legal authority



## VISION SERVICE PLAN
## PROVIDER DISPUTE RESOLUTION PROCEDURE

### I.    OVERVIEW AND PURPOSE

**Introduction**

Vision Service Plan, a California not-for-profit corporation ("**VSP**"), is committed to providing high quality health care to its enrollees through VSP's network of contracted providers. As part of this commitment, VSP maintains a fast, fair and cost-effective dispute resolution mechanism that providers may use to resolve billing, payment, or contract disputes. This Dispute Resolution Procedure ("**DRP**") is available to both contracted and non-contracted providers for Quality Management disputes, Fraud and Abuse Claim disputes and Contract disputes. The separate policies for resolution of these different types of provider disputes are explained below. For all intents and purposes, the term "Providers" encompasses only those optometrists and/or ophthalmologists licensed to practice optometry in their respective state.

**Claims Payment Dispute**

Usual, customary and day-to-day claim payment disputes ("**Claim Payment Dispute**" or "**CPD**") arise when a Provider contests or denies a claim payment reimbursement, makes an appeal, or requests reconsideration of a claim or group of claims if those claim(s) have been denied, adjusted or contested. CPD's are not handled pursuant to this DRP. The CPD dispute will be processed pursuant to the requirements of Title 28, California Code of Regulations 1300.71.38 ("**CCR 1300.71.38**"). CPD's are managed under Claim Appeals in the Eligibility and Authorization Section of the **VSP Provider Reference Manual** ("**PRM**"), found online at eyefinity.com. Any CPD shall be handled and resolved by VSP without charge to the Provider. There is no right to appeal a CPD determination under this DRP, or by a challenge in court.

**Dispute Resolution Procedure Overview**

This **DRP**, is the process established to provide VSP and Providers with a fair and cost-effective process for the final determination of Fraud and Abuse Claim Disputes, Contract Disputes and Quality Management Disputes between VSP and any Provider. Such disputes shall be decided using this DRP, as may be modified from time to time and, accordingly, could be finally decided by an Arbitrator, and not any federal, state, or local court or agency. The DRP is not intended to waive any rights or claims afforded either party with the California Department of Managed Healthcare ("**DMHC**").

**Fraud and Abuse Claim Disputes**

The FBI has identified healthcare billing fraud as the fastest growing white-collar crime in America. Accordingly, California and many other states require licensed health plans, like VSP, to establish and maintain an active anti-fraud and abuse program. VSP's anti-fraud and abuse program operates largely through the Special Investigative Unit (SIU), which coordinates, investigates and assesses the appropriate course of action for incidents involving fraud and abuse. SIU investigations are done in conjunction with VSP's Director of Optometry, Medical Director, the Office of the General Counsel, and appropriate internal business partners. VSP seeks recovery of all damages and penalties permitted by law in any Fraud and Abuse Claim.

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

102018

A fraud claim is one where a Provider knowingly makes or causes to be made a false or fraudulent claim for payment of a health care benefit ("**Fraud**"). An abuse claim is one where the Provider, through inadvertence or neglect, causes to be made a false claim without knowingly or intentionally misrepresenting facts but nonetheless obtains payment for health care services when payment was not in conformity with VSP's policies ("**Abuse**"). (collectively, "**Fraud and Abuse Claim**" or "**FAC**"). A FAC may originate from third-party reports, hotline reports, or data analysis. SIU investigations of a FAC may include an announced or unannounced Provider audit.

When VSP notifies a Provider that VSP has determined the Provider has submitted one or more Fraud and Abuse Claims, and the Provider disputes VSP's determination, the Provider must submit the dispute through VSP's DRP process. FAC disputes may lead to termination from VSP's network of contracted Providers.

### Contract Disputes

Contract disputes between a contracted Provider and VSP concern disputes related to the interpretation, application, intent, termination and breach of the Network Doctor Agreement ("**NDA**"). VSP and contracted Providers must first submit a contract dispute through this DRP prior to filing a Demand for Arbitration. Unless otherwise stated in the Provider's NDA, exhaustion of the Provider Dispute Resolution/Written Submission process ("**PDR**") below is a prerequisite to pursuing binding arbitration. Contract disputes may lead to termination from VSP's network of contracted Providers.

### Quality Management Disputes

VSP maintains a quality management program that ensures Providers comply with their respective NDA and VSP's patient-care policies and procedures ("**QM Program**"). The QM Program is based on health care industry standards set by the American Medical Association ("**AMA**"), National Committee of Quality Assurance ("**NCQA**") and other state and federal guidelines. VSP's QM Program includes clinical peer review of patient medical records and quality of care grievances. Providers failing to meet the QM Program requirements are subject to corrective action up to and including termination from VSP's network of contracted Providers.

Providers receiving corrective action notifications and who dispute VSP's Quality Management findings, must submit the dispute through this DRP process. Unless otherwise stated in the Provider's NDA, exhaustion of the PDR process below is a prerequisite to pursuing binding arbitration.

Generally, such Quality Management disputes will address issues such as: Provider malpractice, professional misconduct, negative finding from a quality assurance medical record review or other peer review proceedings, audit disputes that result from negligent or mistaken billing or that are otherwise not in conformity with VSP's Policies, and criminal and civil wrongs committed by a Provider based on patient complaints or obtained from reporting from the National Practitioner Data Bank ("**NPDB**"), state/federal agencies and other third-party complaints ("**QM Disputes**").

### Confidentiality

All facts, records, data and information used, acquired or exchanged in preparation for, submission, and hearings hereunder ("**Materials**") shall be used and maintained in strict confidence and shall not be disclosed to any third party. The Materials shall only be used by the parties to the extent necessary to carry out the purposes of the DRP. The Materials may be subject to subpoena or discovery as may be required by law. The confidentiality of the Materials shall survive the final actions, decisions, awards and any modification or termination of the NDA or DRP. The DRP is a proprietary document belonging solely to VSP. In no event shall the DRP be shared, distributed or published to any third party or filed in court without the prior written consent of VSP or appropriate court protective order. Silence in response to any request to disclose shall not be deemed as consent to any disclosure.

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

102018

**Dispute Resolution Costs**

The Provider is not responsible for any administrative costs associated with either Provider Dispute Resolution or the Peer Review Process as more fully set forth below. Each party is responsible for their respective attorneys' fees and costs, if any, in all Provider Dispute Resolution and Peer Review proceedings.

## II.    PROVIDER DISPUTE RESOLUTION ("PDR")/Written Submission

**Notice of Adverse Action / Right to Contest or Deny**

If VSP intends to take adverse action against a Provider as provided above, VSP will send an Adverse Action Notice ("**Notice**") to the Provider. The Notice shall contain the following information:

- The action(s) or proposed action(s) that VSP intends to take against the Provider (e.g. restitution, probation, termination, etc.);
- A summary of the factual basis for the action(s) to be taken;
- That a Provider can dispute the Notice with instructions on how to commence dispute resolution;
- In Fraud and Abuse matters, where an audit was conducted pursuant to Health and Safety Code sections 1371, 1348 and other relevant statutes and regulations, a spreadsheet summary of the audit that identifies the claim number, name of the patient, the date of service and a clear explanation of the basis upon which VSP believes that the amount paid on the claim is in excess of the amount due, including interest and penalties on the claim. In addition, the Notice shall include the information required by Health and Safety Code section 1371, subdivision (b)(2) and any other information required by the associated regulations.

If VSP intends to terminate a Provider by removing them from the network and/or terminating their ability to submit claims, the Provider may remain on the VSP doctor network ("**Network**") and/or submit claims until a written determination of the dispute is made, as more fully set forth below. However, VSP, in its sole and absolute discretion, may terminate the Provider from the network and/or the right to submit claims immediately if there is reasonable cause to conclude any of the following:

- Provider's conduct presents a past or present risk of harm to any VSP patient ("**Member**");
- Provider's conduct presents an unacceptable quality of care issue to any Member;
- Provider's conduct constitutes intentional fraud, misrepresentation or gross indifference in the submission of true and accurate claims;
- Provider's conduct constitutes incompetence or willful indifference in treating a patient's visual or other health care needs;
- Provider's license or other lawful authority to practice has expired, been terminated or is in any other form of suspension, probation or conditional status;
- Provider has refused to allow an audit of his/her practice(s); or
- Other reasonable cause exists.

VSP's failure to immediately terminate Provider shall not create an inference that any one or all of the above situations have not occurred; shall not infer that termination is not warranted in the particular case; and shall not act as a waiver to prevent VSP from deciding to terminate Provider based on the Determination, at a later time.

For all Notices, the completion of this PDR process is a condition precedent to the commencement of either the peer review hearing or binding arbitration.

For purposes of this DRP, and unless otherwise provided, Notices are deemed made, and all produced documents are deemed "produced," when deposited in the U.S. mail, sent by email or by other means as agreed to in writing by the parties. The date of "receipt" will be five (5) working days after the date of

-3-

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

mailing, or, if emailed, the date the email was received. Should any deadline to produce fall on a weekend or holiday, the new deadline shall be the next business day.

## Dispute Resolution Administrator

The VSP Dispute Resolution Administrator ("**DRA**") manages all procedural DRP matters and communications between the Provider, VSP and the submissions made pursuant the DRP. The current DRA is Melanie Trammell. Her contact information is: VSP, Attn: Melanie Trammell, 3333 Quality Drive, MS 163, Rancho Cordova, CA 95670, email: melatr@vsp.com, phone: (916) 851-4092.

## Submission of Dispute

Upon receipt of a Notice, a Provider may contest or deny the Notice. To contest or deny the Notice, Provider shall send a Notice of Contest/Denial ("**Contest/Denial**") to the VSP DRA at the address identified in the Notice. The deadline for submission of a Contest/Denial is as follows:

- For a Notice regarding a Fraud and Abuse Claim Dispute, the Provider shall send the Contest/Denial within forty-five (45) working days of receipt of the Notice. A Notice shall be deemed uncontested if a Contest/Denial is not received within this time frame.
- For a Notice regarding any other dispute or challenge covered by this DRP, the Provider shall send the Contest/Denial within 365 calendar days of the Notice. However, VSP may impose an effective date of action within a Notice (other than one regarding a Fraud and Abuse Claim Dispute) that is less than the 365 calendar days if consistent with applicable law.

The Contest/Denial shall state and provide the factual and legal basis upon which the Provider believes that restitution and/or termination are not warranted. The Contest/Denial shall at a minimum include:

- the Provider's name, identification number and contact information;
- the name and contact information of legal counsel, if any;
- a clear identification of the claims from the audit that are disputed, the date(s) of service of each claim, and the basis of the contest or denial as to each claim;
- a clear explanation of the basis upon which the Provider believes that restitution, termination or other remedy sought by VSP and identified in the Notice is not warranted or in error; and
- if applicable, a clear statement of all legal issues being raised.

Providers shall submit with their Contest/Denial any and all documents (patient charts, exam records, financial documentation, lab invoices, patient statements, legal documentation, etc.), statements and other evidence that they believe supports the Contest/Denial. The Provider's Contest/Denial shall be Provider's sole opportunity to submit evidence in this process. Provider may amend the Contest/Denial within thirty (30) working days of notice from VSP, where VSP has determined that information is missing or otherwise incomplete. Where fraud and abuse claims are uncontested, VSP shall be entitled to offset the amounts disclosed in the Notice, but only after giving the Provider ten (10) working days' notice prior to withholding those disclosed amounts.

## Acknowledgment of Dispute

Upon receipt of Provider's Contest/Denial, VSP will acknowledge receipt of the Contest/Denial to the Network Doctor's address identified in the Contest/Denial (a) within two (2) working days of the date of receipt of an electronic Contest/Denial; or (b) within fifteen (15) working days of the date of receipt of a paper Contest/Denial.

## VSP's Response

Within fifteen (15) working days of receipt of a complete Contest/Denial, VSP shall provide to the DRA, its written response to the Contest/Denial ("Response"). The Response shall include all documents,

-4-

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

statements or other evidence that support VSP's position as to the Contest/Denial and the damage or other remedy being sought. This shall be VSP's sole opportunity to submit evidence in this process.

## Written Determination

A written determination ("**PDR Determination**") stating the pertinent facts and explaining the reasons for the determination shall be issued within forty-five (45) working days after the date of receipt of the Contest/Denial or amended Contest/Denial. A PDR Determination shall be final unless the Provider requests a Peer Review Hearing as more fully set forth below.

## Decision and Payment

If the PDR Determination concludes that Provider owes VSP any monies, Provider shall pay any monies to VSP within fifteen (15) working days of issuance of the PDR Determination unless Provider requests additional resolution measures as detailed below. If VSP owes monies, interest or penalties to the Provider, VSP shall pay any outstanding amounts to Provider within fifteen (15) working days of the issuance of the Determination.

If Provider fails to reimburse VSP within the time above and has not requested further resolution, the PDR Determination shall be deemed final and VSP may withhold/offset Provider's current claims payments until the restitution is paid in full. Through the PDR Determination, Provider will be given fifteen (15) working days written notice of any intended withholding/offset.

Upon issuance of the PDR Determination, a Provider has the option to appeal to either a Peer Review Hearing or to a de novo review through binding arbitration ("**Arbitration**"). If a Provider requests a Peer Review Hearing, they may still appeal to Arbitration if unsatisfied with the outcome of the Peer Review Hearing. VSP may only appeal to Arbitration after a Provider has requested a Peer Review Hearing and a Panel Determination has been rendered. See below for further details.

## III.   PEER REVIEW HEARING

## Overview

Providers unsatisfied with the result of the PDR may request a Peer Review Hearing ("**Hearing**") comprised of a panel of practicing Network Doctors. A request for or participation in a Hearing does not waive the Provider's future right to request binding arbitration.

## Peer Review Hearing Panel

The Chair of the Panel ("**Panel Chair**"), who is appointed by the Chairman of the Board of Directors, shall appoint two (2) optometrists who are also VSP network doctors to serve on the Peer Review Hearing Panel ("**Panel**"). The Panel Chair shall be in charge of the Hearing and shall make all determinations of the procedural conduct of the Hearing. No Panel member shall be in direct economic competition with the affected Provider, and no Panel member shall be in a position to gain direct financial benefit from the outcome of the Hearing. The fact that Panel members and Provider are on the same Provider panel or network shall not, standing alone, constitute direct economic competition within the meaning of this paragraph. Panel members shall be provided copies of all documents to be considered at the Hearing and may attend the Hearing in-person or by telephone conference.

## Request for Peer Review Hearing

Providers requesting a Hearing must submit a Peer Review Hearing Request ("**Request**") within fifteen (15) working days of receipt of the PDR Determination. The request must include whether the Provider intends to attend the Hearing in person or via teleconference, and if Provider will have Counsel in attendance.

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

102018

**Acknowledgement of Request**

The DRA will acknowledge ("**Acknowledgement**") the request for a hearing within five (5) working days of its receipt. The Acknowledgement will include the date in which the Provider's matter will be heard and will lay out any accompanying deadlines which will occur before the hearing is to take place.

**Submission of Additional Evidence/Request to Include Witnesses**

In addition to the initial documentation provided during PDR, both parties will have an opportunity to submit additional relevant evidence, including the right to request witness testimony at the Hearing, either in person or via teleconference. Additional evidence must be submitted to the DRA within fifteen (15) working days after receipt of the Acknowledgment. The decision to include additional submitted evidence or witnesses is in the sole discretion of the Panel Chair.

**Court Reporter**

Either party, or the Panel, may arrange for a stenographic record of the proceeding to be kept by an independent certified court reporter ("**Court Reporter**"). The party requesting the use of a Court Reporter shall pay the expense of the original certified transcript ("**Transcript**"). The opposing party and the Panel shall be permitted to purchase a copy of the Transcript from the Court Reporter and shall only be required to pay the Court Reporter's usual and customary fee for a copy of the Transcript. If the Panel desires the use of a Court Reporter, the Court Reporter costs, including the costs of the transcript(s), shall be equally shared by the parties. The Court Reporter shall be physically present at the Hearing.  With the exception of personal notes of the Hearing by the parties and their counsel, there shall be no audio, video or other recording of the Hearing of any kind.

**Peer Review Hearing**

A. *Attendance/Response.* Provider and VSP shall attend the Hearing as designated and shall respond fully and completely, under oath, to all questions from members of the Panel. Either party may request to attend the Hearing in-person or by telephone conference.

B. *Legal Counsel.* Each party may be accompanied by legal counsel at the Hearing. However, only the parties to the case, VSP and the Provider, will be permitted to present their respective cases to the Panel. Unless the Panel Chair determines otherwise, during the Hearing, each party may offer an opening and closing statement, may question witnesses (if any) and introduce previously produced documents as evidence. As a peer-to-peer review, the Panel Chair may, and is encouraged to, facilitate a discussion of the evidence between the Provider and the members of the Panel. Legal Counsel shall not be permitted to call or question witnesses or argue the merits of facts or issues during the course of the Hearing. Providers may consult with their Counsel during the course of the Hearing, but only insofar as it does not interrupt or delay the Hearing.

At the close of Hearing, counsel for each party may give a closing statement that shall not exceed five (5) minutes, except as may be permitted by the Panel Chair. A closing statement shall be limited to the facts presented at the Hearing and shall not identify, address or include new evidence. Each party shall bear its own legal fees, costs and expenses.

In a Hearing where the Provider is a physician, and where the Request for Hearing contains issue(s) concerning a final proposed action for which reporting is required under California Business and Professions Code Section 805, and where the Provider is not represented by counsel in the Hearing, the Panel shall not be entitled to the presence of legal counsel at the Hearing.

C. *Hearing Management.* The Panel Chair, in his or her sole and absolute discretion, shall manage the Hearing and admission of evidence so as to timely consider the facts and address the issues to be heard.

-6-

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

D. *Scope of Evidence*. The rules of evidence and Code of Civil Procedure relating to the questioning of witnesses and presentation of evidence in court shall not apply to the Hearing. Evidence offered and admitted shall be directly relevant to the issues designated in the Request. Regardless of the issues identified and raised by the Request, the Panel shall not consider testimony, evidence or arguments challenging the validity, purpose or reasoning of the NDA or DRP. Any such testimony or other evidence will not be admitted or considered, regardless of its possible admissibility in a court of law or other tribunal. Any dispute regarding the NDA or this DRP shall, at either party's request, be submitted to binding Arbitration pursuant to Section IV below.

E. *Adjournment and Conclusion*. The Panel Chair may adjourn, reconvene or reopen the Hearing at the convenience of the Panel and/or the parties without special notice, and shall close the Hearing upon determining that the record is complete. The Panel shall, thereafter, conduct its private deliberations and render its decision in writing.

## Peer Review Panel Determination

Within fifteen (15) working days after the close of the Hearing deliberations, the Panel shall issue to the parties a reasoned decision resolving the issues addressed in the Hearing ("**Panel Determination**") and provide notice of the right to request de novo review through binding arbitration. Subject to the right of either party to request Arbitration, the Panel Determination shall be final and binding and there shall be no further right by either party to appeal or otherwise challenge the Panel Determination to VSP's Board of Directors, in court or other forum.

## Decision and Payment

If the Panel Determination concludes that Provider owes VSP any monies, Provider shall pay any monies to VSP within fifteen (15) working days of issuance of the Panel Determination. If VSP owes monies, interest or penalties to the Provider, VSP shall pay any outstanding amounts to Provider within fifteen (15) working days of the issuance of the Panel Determination.

If Provider fails to reimburse VSP within the time above, VSP may withhold/offset Provider's current - claims payments until the restitution is paid in full. The Panel Determination shall give Provider fifteen (15) working days written notice of any intended withholding/offset.

A Peer Review Determination shall be final unless either party requests binding arbitration. Any payments due by either party shall be stayed in the event that either party elects to continue to arbitration.

## IV.   DE NOVO REVIEW [BINDING ARBITRATION]

## Requesting De Novo Review-Binding Arbitration

At the request of either Provider or VSP, a Panel Determination may be appealed to final and binding arbitration with venue in Sacramento, California. Except as may be provided herein, either party may request Arbitration under this provision. Arbitration may be requested in the following circumstances:

- By the Provider upon receipt of a PDR Determination;
- By VSP or Provider upon receipt of a Panel Determination;
- By VSP or Provider in any controversy that relates to procedural/substantive issues of the DRP (section V below);
- By VSP or Provider in any and all other contests, denials or controversies which may arise that are not otherwise provided for herein;
- By VSP if Provider refuses to comply with a Notice, after having exhausted his/her rights to PDR and the Peer Review processes; or
- By VSP if Provider fails to comply with either the PDR or Panel Determinations and has failed to exhaust his/her remaining rights to Peer Review and/or Arbitration.

-7-

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

A Request for Arbitration ("**Request for Arbitration**") must be made within fifteen (15) working days of either a PDR or Panel Determination.

The Request for Arbitration shall be made to the DRA at the address stated above. The DRA shall submit the Request for Arbitration to JAMS, The Resolution Experts ("**JAMS**"). The Request for Arbitration shall include a copy of the Contest/Denial provided in the PDR process above, and a statement of all issues to be determined in the Arbitration.

The Arbitration shall be heard before one (1) neutral Arbitrator from JAMS, pursuant to the JAMS Streamlined Arbitration Rules & Procedures in effect at the time of the Request for Arbitration, ("**JAMS Rules**") unless otherwise agreed to in writing by the parties. The Arbitrator shall be a retired Judge, or a retired attorney with over 20 years of practice; with at least 15 years' experience in health care claims. To the extent that there are any revisions to the JAMS Rules, the rules in effect on the date of the commencement of Arbitration shall apply. To the extent that the JAMS Rules are deleted or otherwise extinguished, the Commercial Rules of JAMS shall apply, except that discovery shall be limited to a document exchange between the parties. In any Arbitration provided for herein, regardless of what the JAMS Rules reflect now or at any time in the future, there shall be no material, expert or other witness depositions, interrogatories or requests to admit, unless otherwise agreed to between the parties. The JAMS Rules can be found at https://www.jamsadr.com/rules-streamlined-arbitration.

If JAMS declines to conduct the Arbitration, the Arbitration instead shall be administered by the American Health Lawyers Association ("**AHLA**"), and pursuant to the JAMS Rules referenced above, unless otherwise agreed to by the parties.

If VSP intends to terminate the Provider as set forth in the Notice, and termination was upheld by either the PDR or Peer Determinations, the Provider may remain on the Network and submit claims until the Arbitrator issues its award as more fully set forth below. However, VSP in its sole and absolute discretion, may terminate the Provider and halt claims processing immediately as set forth above.

If Arbitration is not requested within the time and in the manner set forth herein, each of the parties shall be deemed to have accepted the PDR Determination and/or the Panel Determination, which shall become final, binding and conclusive; shall be effective immediately; shall not be subject to appeal or judicial review except to the limited extent provided by the FAA; and shall be confirmed and Judgment entered consistent therewith in the Sacramento County Superior Court, or any other court having competent jurisdiction. There shall be no right to seek further redress through any other legal action.

**Meet and Confer**

After requesting Arbitration, but before selection of an Arbitrator, the party requesting arbitration ("**Claimant**") shall propose final and binding terms of settlement ("**Settlement Proposal**") to the other party ("**Respondent**"). Respondent shall accept or reject the Settlement Proposal. If the Settlement Proposal is accepted by Respondent, the parties shall proceed to draft and execute a settlement agreement, forthwith. If Respondent rejects the Settlement Proposal, the case shall proceed to Arbitration. If Claimant obtains an arbitration award at Arbitration that is greater than the Settlement Proposal, the Claimant shall be deemed the prevailing party for purposes of an award of arbitration costs, plus an award of attorneys' fees, which attorneys' fees shall not exceed $15,000. (California Civil Code Section 1717 shall not apply for purposes of determining the prevailing party.) If the Arbitrator's Award is less than the Settlement Proposal, Respondent shall be deemed the prevailing party for purposes of an award of arbitration costs, plus an award of attorneys' fees, which fees shall not exceed $15,000. If Claimant fails or refuses to make a Settlement Proposal pursuant to this Section, Claimant shall be deemed to have waived his/her/its right to recover any attorney fees or arbitration costs regardless of the terms contained in the NDA or the fact that the Arbitration Award awards Claimant greater relief than Respondent.

-8-

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

## Arbitration Fees

Each JAMS Arbitrator has their own schedule of fees applicable to Arbitrations. It is each party's responsibility to satisfy themselves as to the amount of such fees prior to selection of the Arbitrator. All fees shall be shared equally by VSP and Provider and shall be payable to JAMS promptly upon its request. If either party fails to pay their respective fees, the following shall apply:

- If Claimant fails to pay their share of fees, it shall be concluded that the Claimant has failed to agree to participate in the Arbitration process and the PDR Determination or Panel Determination shall become final and binding. There shall be no further right to appeal or to seek other redress; including challenge in court. The PDR Determination or Panel Determination shall become final and effective immediately. In such case, Respondent may proceed with the Arbitration at their sole cost and expense, and without the Claimant's participation, solely for the purpose of finalizing the PDR or Panel Determination as an Arbitration Award. No further involvement by Claimant shall be permitted.
- If Respondent fails to timely pay arbitration fees or costs in an arbitration, Claimant will have the right to pay and proceed with the Arbitration without the Respondent's participation. No further involvement by Respondent will be permitted.
- If Arbitration was requested by either party subsequent to a Section V dispute below and Claimant fails to timely pay its portion of the arbitration fees, the claim shall be deemed waived and shall be considered time-barred. There shall be no further right to arbitrate or to seek relief of any nature, in any forum.

## Record

Any party, or the Arbitrator (at the parties shared expense), may arrange for a stenographic record of the proceeding to be kept by an independent Court Reporter. Any party wanting a record of the Arbitration shall give notice to the Arbitrator and the other party at least ten (10) days prior to the Arbitration. The party noticing the use of a Court Reporter shall pay the expense of the original transcript. The opposing party and the Arbitrator shall be permitted to purchase a copy of the transcript from the Court Reporter and shall only be required to pay the Court Reporter's usual and customary fee for a copy of the transcript. If the Arbitrator desires the use of a Court Reporter, the Court Reporter and transcript costs shall be equally shared by the parties. The Court Reporter shall be physically present at the Arbitration. With the exception of personal notes of the Arbitration by the parties and their counsel, there shall be no audio, video or other recording of the Arbitration of any kind.

## Withdrawal

At any time prior to submission to JAMS, the Request for Arbitration may be withdrawn by Claimant, with prejudice. Once an Arbitrator has been selected, no withdrawal will be permitted unless consented to in writing by Respondent and JAMS. Any fees then due and owing to JAMS shall be paid in full solely · by the Claimant.

## Class Action Waiver

Any Arbitration conducted herein will be conducted only on an individual basis by the Provider. Provider waives any and all rights, if any, to bring a class action Arbitration as to any dispute identified herein to include any other dispute related to the NDA and/or this DRP.

## Award

The Arbitration Award shall be final, binding and conclusive, shall be effective immediately, shall not be subject to appeal or judicial review except to the limited extent provided by the Federal Arbitration Act ("FAA") and shall be enforceable in the Sacramento County Superior Court, or in any court with the requisite jurisdiction. The Arbitration Award shall be considered an Arbitration Award for purposes of confirming an award under California Code of Civil Procedure Section 1285, et. seq. The party seeking

*VSP Proprietary Document. Not to be distributed without written permission from VSP.*

102018

confirmation of the Arbitration Award shall be entitled to recover attorney's fees and costs incurred in confirming the Arbitration Award.

## V.   OTHER DISPUTES

**Other Disputes**

Should any other dispute arise between VSP and a Provider, including breach of the confidentiality provisions included herein (including breach by any person acting for or on a party's behalf), the parties must first make a good faith effort to resolve the dispute. Notice of such dispute must be provided to the other party in writing ("**Notice of Dispute**"). If the parties are unable to reach a mutually agreeable resolution within twenty (20) working days of the party's receipt of the Notice of Dispute, the dispute shall be submitted to binding arbitration pursuant to the rules and procedures provided herein. A Request for Arbitration must be made within sixty (60) working days of receipt of the Notice of Dispute.

For all disputes under this Section V, any Arbitration Award shall be final, binding and conclusive, shall be effective immediately, shall not be subject to appeal or judicial review except to the limited extent provided by the FAA and shall be enforceable in the Sacramento County Superior Court, or in any other court having jurisdiction. The Arbitration Award shall be considered an Arbitration Award for purposes of confirming an award under California Code of Civil Procedure Section 1285, et. seq. The Arbitration Award may be entered in any court having jurisdiction. The party seeking confirmation of the Arbitration Award shall be entitled to recover attorney's fees and costs incurred in confirming the Arbitration Award.

## VI.   GENERAL PROVISIONS

Except as may be required by law, no VSP agent or employee is authorized to make material changes or alterations to this DRP without first obtaining approval from VSP's Board of Directors or another Committee or Officer appointed thereby. Absent exigent circumstances or as required by law, any material alteration to this DRP shall go into effect upon thirty (30) calendar days' notice to Provider through the usual means of communication. Fraud and Abuse Claims Disputes, Contract Disputes and Quality Management disputes shall be handled pursuant to the DRP in effect at the time of submission of the Contest/Denial as set forth herein. A Request for Arbitration shall be handled pursuant to the DRP in effect at the time that the Request for Arbitration is made.

If any provision of this DRP is held by an Arbitrator to be invalid, void or unenforceable, the remaining provisions will continue in full force and effect without being impaired or invalidated in any way. Any such determination will only be operative with respect to the Provider that is a party to that Arbitration proceeding. Any ambiguity or conflicting provision of the DRP shall be interpreted so as to give full meaning to the intent and purpose of the DRP.

The provisions of the DRP shall survive termination of the effective NDA.

-10-

102018

February 6, 2020

VSP Credentialing Committee

Attn: Jill Myers

3333 Quality Drive

Rancho Cordova, CA 95670

RE: DEMAND TO REINSTATE ADAM P. BECK, M.D. AS VSP PROVIDER AND MONEY

DAMAGES


Dear Members of the Credentialing Committee,

Kindly allow this correspondence to serve as a demand for relief and reconsideration in the

decision to terminate my affiliation with VSP in order to obviate the necessity of judicial

intervention.

Pursuant to the express provisions of VSP's Agreement with New England Eye and Facial

Specialists as well as Massachusetts General Laws Chapter 93A, §§ 2 & 11, I write to formally

demand injunctive relief  on account of the unfair and deceptive acts or practices committed in

connection with VSP's decision to terminate my affiliation based upon the following rationale

proposed by VSP in their November 6, 2019 letter which was not received by me until January

29, 2020.  This in itself was deceptive in that I learned of this decision from a phone call

regarding a patient's eligibility for eyeglasses on or about January 29, 2020.

VSP has indicated the following in its November 6, 2019 letter:

"Due to malpractice issues, the Committee has

made the decision to remove you from VSP network participation.

The above reasons for adverse action above directly violates your NDA.

Your NDA provides:

Section D.12(b) Early Termination. Notwithstanding 12.a., either party may terminate this

Agreement at any time by giving the other party at least ninety (90) days prior written notice.

VSP may also terminate this Agreement immediately if ND (i) fails to remain licensed and/or

VSP credentialed, or fails to ensure that its employee doctors are licensed and/or VSP

credentialed, (ii) breaches any term and/or condition of this Agreement, or (iii) has

engaged/engages in any act of moral turpitude, professional misconduct, criminal or civil

wrongdoing which, in VSP's sole discretion, is or may be detrimental to VSP, its Clients and/or

VSP Patients. This includes, VSP's evaluation and determination as to the number, nature and

severity of any malpractice claim(s) or quality of care issue(s), as determined by VSP's

credentialing or other Board-appointed committee. Until such termination is final, ND will

continue to perform service in conformity with this Agreement."


I previously submitted letters to VSP on August 29, 2019 and October 14, 2019 in response to

VSP's concerns. Since the October 14, 2019 letter, two malpractice claims in New Hampshire

were Court ordered as a nonsuit. In effect, I believe that the decision to terminate me was made

with a lack of sufficient information. I have had two settled malpractice suits, the second arising

out of the first. The Knox case was a very public trial where a sympathetic plaintiff led to an unfavorable jury verdict. The case was settled post trial. The Smalley case was dismissed by the Court, only to later be reinstated. I took my attorney's advice and I settled this case to avoid the potential publicity from a sympathetic plaintiff and risk of an unfavorable verdict.

At no point did either patient have an affiliation with VSP. No VSP patient has ever claimed negligence against me. I have not engaged in any act of moral turpitude, professional misconduct, criminal or civil wrongdoing which may be detrimental to VSP, its Clients and/or VSP Patients, including VSP's evaluation and determination as to the number, nature and severity of any malpractice claim(s) or quality of care issue(s), as determined by VSP's credentialing or other Board-appointed committee.

It is unfair, deceptive, and arbitrary and capricious to terminate a provider for two settled malpractice claims, the second of which stems from the initial. I am at a loss as to the decision making in this case other than the facts were evaluated in a cursory manner in VSP's decision to terminate. I am aware of other physicians with multiple malpractice suits who remain VSP providers. In addition, both of my cases had sufficient expert support for me by reputable, Board-Certified Ophthalmologists.

The above-described conduct by VSP amounts to more than a clear breach of contract. As detailed above, the facts demonstrate that there is the basis for a claim sounding in a breach of the implied covenant of good faith and fair dealing. As such, while an ordinary breach of

contract action may not be sufficient to prove a violation of Chapter 93A, a breach of the implied

covenant of good faith and fair dealing may be sufficient. *See* Mass. Employers Ins. Exch. v.

Propac-Mass, Inc., 420 Mass. 39, 43 (1995); Cherick Distribs. v. Polar Corp., 41 Mass. App. Ct.

125, 128 (1996). Clearly, I have incurred and will continue to suffer damages, including, but not

limited to economic harm relating to degradation of my professional reputation and loss of

business opportunities, due to VSP's actions.


Pursuant to M.G.L. c. 93A, § 11, any person who engages in the conduct of any trade or

commerce and who suffers any loss of money or property, real or personal, as a result of the use

or employment by another person who engages in any trade or commerce of an unfair method of

competition or an unfair or deceptive act or practice declared unlawful by section two or by any

rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring

an action in the superior court… for damages and such equitable relief, including an injunction,

as the court deems to be necessary and proper. Such person, if he has not suffered any loss of

money or property, may obtain such an injunction if it can be shown that the aforementioned

unfair method of competition, act or practice may have the effect of causing such loss of money

or property.


As a result of the damages already suffered to my professional reputation and business

relationships, and continuing ongoing damages, a demand for the following injunctive relief is

made: (1) that VSP reinstate my affiliation with VSP immediately. The failure to provide such

injunctive relief will unquestionably result in actual continued monetary damages to be suffered,

amounting to $303,692.30 in receivables and future earnings, which can be doubled or trebled due to VSP's past and continuing willful violation of the statute. Further, the finding of such a c. 93A violation will expose VSP to both attorneys' fees and costs. In addition, I will be seeking interest for all damages incurred after the termination date.

I strongly advise you to forward this correspondence to your counsel. I look forward to attempting to reach an amicable resolution of this dispute within the next thirty (30) days. You have 30 days to make a reasonable offer to resolve this matter and failure to do so is a per se violation of c. 93A. If not, I expressly reserve my right to pursue any and all avenues to obtain equitable redress and economic damages arising from VSP's tortious conduct and contractual breaches, including those not specifically set forth herein.

Very truly yours,

Adam P, Beck, M.D.

vsp

April 8, 2020

Adam Beck, MD
6 Windsor Street
Andover, MD  01810

Via Certified Mail/e-mail
Return Receipt Requested

**RE:**    Written Determination
          In the matter of Dr. Adam Beck

Dear Dr. Beck:

Thank you for submitting your Notice of Contest/Denial ("**Contest/Denial**"), which was received on February 6, 2020.  As required by VSP's Dispute Resolution Procedure ("**DRP**"), your Contest/Denial has been thoroughly reviewed by a Case Reviewer.  The following is the written determination ("**Determination**") and includes the reasoned opinion of the Case Reviewer's decision.

**I.     Overview**

On or about November 6, 2019, you received a Notice of Adverse Action ("**Notice**") concerning multiple issues reviewed by VSP's Credentialing Committee.  You were terminated from the VSP Doctor Network effective, February 6, 2020, however this termination was stayed until the outcome of this Determination.

VSP's Dispute Resolution Administrator ("**DRA**") received your Contest/Denial on February 6th.    Your documents supporting the Contest/Denial, along with those provided by VSP in response were sent to Dr. Geoffrey E. Reynolds, an Optometrist with a practice in Mililani, HI for review.  The following Determination states the pertinent facts and reasoning behind the Determination, and shall be considered final unless a Peer Review Hearing is requested by you or Arbitration is requested by either party, as more fully set forth in the DRP:

**II.    Case Reviewer Findings**

   **A.  Findings:** Based on the evidence submitted by you and by VSP, the Case Reviewer makes the following specific findings of fact:
      1.  On August 22, 2016 you entered into a Network Doctor Agreement ("Agreement"), which sets forth the benefits and obligations of the parties.
      2.  Section B.2 of the Agreement requires that the *"ND further agrees to immediately notify VSP of the revocation, suspension, restriction, limitation and/or imposition of any probationary or limiting terms against/regarding the licensure of ND, as well as any condition or event affecting the ability of or limitation on ND to practice optometry or ophthalmology to the full scope of his/her licensure."*
      3.  Section B.8.b further states VSP *"...may also terminate this Agreement immediately if ND (i) fails to remain licensed and/or VSP credentialed, (ii) breaches any term and/or condition of this Agreement, or (iii) has engaged/engages in any act of moral turpitude, professional misconduct, criminal or civil wrongdoing which, in VSP's sole discretion, is or may be detrimental to VSP, its plans and/or VSP Patients."*
      4.  On July 17, 2019, the Massachusetts Board of Registration in Medicine approved a Consent Order whereby you were reprimanded and your license was subject to permanent practice restrictions. There are four (4) separate restrictions on your license. In the Consent Order, you further acknowledged that you entered a disciplinary agreement with the New Hampshire Board of Medicine, engaged in conduct which places into question your competence to practice medicine, failed to maintain adequate medical records and failed to provide medical records in a timely matter. You failed to notify and disclose to VSP that your license was placed on permanent practice restrictions. Restrictions on licensure as well as the failure to notify VSP or those restrictions individually and collectively constitute a breach of your Agreement.
      5.  Upon review of these licensing restrictions, the Credentialing Committee also discovered several significant malpractice issues related to your practice of medicine.  According to your Agreement, causes for early termination also *"...includes, VSP's evaluation and determination as to the number,*

1

*nature and severity of any malpractice claim(s) or quality of care issue(s), as determined by VSP's credentialing or other Board-appointed committee."*

6.  The record identifies four (4) separate malpractice claims filed in 2017 – 2019 related to patient treatment from 2011 through 2017 involving the quality of care to your patients.

I.  **Conclusions**

A.  The Case Reviewer concludes that you did breach the Network Doctor Agreement by not maintaining your licensure in good standing.

B.  The Case Reviewer further concludes that the evidence shows you concealed material facts regarding your licensure from VSP in failing to report that your Medical license was in fact restricted by the Massachusetts State Board.

C.  The Case Reviewer concludes that you have shown a pattern of questionable care and decision making as evidenced by the multiple malpractice claims filed against you by a variety of plaintiffs in the recent past. It is reasonable to believe that VSP and its members could be at risk.

D.  The Case Reviewer concludes that the Credentialing Committee's decision to terminate its Network Doctor Agreement with you was a reasoned decision and further concludes that it should be upheld. You will be able to reapply to the VSP Doctor Network if your medical licensures are returned to good standing without condition or restriction, however your reapplication will not guarantee reinstatement.

   1.  As VSP patients attempt to schedule appointments, they should be advised that after **May 11, 2020** you will no longer provide patient services as a VSP Network Doctor on an in-network basis, nor shall your office be considered a VSP qualified office location. Neither VSP, nor the VSP patient, will be liable for payment of any charges incurred without the VSP patient's prior knowledge of the fact that you are no longer a VSP Network Doctor.

   2.  Effective **May 11, 2020**, VSP will no longer accept electronic claims from you on an in- or out-of-network basis. No claims under any of your tax ID numbers will be accepted, nor will any claims that come from your office location be accepted. Paper claims submitted by you for services provided to VSP patients prior to the termination date, may be accepted for a period of up to six (6) months after the termination date in accordance with VSP's policy. Your name will continue to appear on the Network Doctor list only until the next publication, at which time it will be removed.

E.  Your Network termination will be reported to the National Practitioner Data Bank (NPDB) as required by law.

If you agree to comply with the findings and conclusions of the Panel, please indicate your agreement by signing and dating the attached *Determination Acknowledgment* form. Retain a copy for your records, and return one signed original to VSP, within **fifteen (15) working** days of receipt of this letter, via mail, to the Attention of Melanie Trammell, MS 163, 3333 Quality Drive, Rancho Cordova, CA 95670 or by email to: doctordispute@vsp.com

**V.  Peer Review/Arbitration**

If you do not accept the Determination you have the right to a review of the Determination at a Peer Review Hearing ("**Hearing**") or De Novo Review ("**Arbitration**") in accordance with the DRP. Please refer to the DRP to determine which option may be right for you.

If you request a Hearing or Arbitration and you later retract your request or fail to attend and participate in the scheduled Hearing or Arbitration, the Determination shall become final and VSP will seek an Award consistent with the Determination. VSP may then seek to confirm the Award and enter judgment in the Sacramento County Superior Court. Under the DRP, there shall be no further right to appeal or seek other redress, including a challenge in court.

If a Hearing or Arbitration is requested, please indicate your election on the attached *Determination Acknowledgment* form. Sign, date and return it to Melanie Trammell, VSP's Hearing Administrator, at 3333 Quality Drive, Rancho Cordova, CA 95670 or by email to: doctordispute@vsp.com within **fifteen (15) working** days of receipt of this letter.

Should additional assistance be required, please contact Melanie Trammell at 916.851.4092.

Sincerely,

*Geoffrey E. Reynolds*

Geoffrey E. Reynolds, OD, FAAO

Written Determination: DM 0220

April 9, 2020

VSP Credentialing Committee

Attn: Melanie Trammell

3333 Quality Drive

MS 163

Rancho Cordova, CA 95670

melanie.trammell@vsp.com

RE: Termination from VSP MGL 93a Letter

**SENT VIA MAIL AND CERTIFIED MAIL RETURN RECEIPT
REQUESTED**

Dear Ms. Trammell:

Please be advised that I am in receipt of VSP's correspondence dated April 8, 2020
(hereinafter "the Termination letter") which purported to revoke my affiliation
with Vision Service Plan (hereinafter "VSP"). Kindly allow this correspondence
to serve as a request for reconsideration and/or an appeal of the VSP's decision to
obviate the necessity of judicial intervention. If no such reconsideration is
available, then I am invoking my right to arbitration and/or suit in a Massachusetts
Court.

Pursuant to the express provisions of the VSP's Provider Manual and Contract
with me as well as Massachusetts General Laws Chapter 93A, §§ 2 & 11, I write to
formally demand injunctive and monetary relief on behalf of myself on account of
the unfair and deceptive acts or practices committed in connection with VSP's
unlawful revocation of my affiliation with VSP.

On or about July 29, 2019, I communicated with Jeff Vellenga from VSP about a Massachusetts Board of Registration in Medicine Consent Order in which I had entered. The executed Consent order was received by me from the Massachusetts Board of Registration in Medicine on July 29, 2019. On August 1, 2019, I submitted initial communication of the Consent order to VSP. I submitted further correspondence to clarify in early August 2019 and was initially terminated by VSP on August 9, 2019. I then communicated with Ms. Trammell and requested an appeal on or about September 3, 2019. On October 8, 2019, VSP then communicated again via a letter from Ms. Noguchi asking for clarification on a settlement for patient David Smalley for which I replied on October 15, 2019. No mail, certified letter, or email was then sent prior to my message to Ms. Myers from VSP on January 29, 2020 after my office received notification that my credentialing would be terminated on February 6, 2020 when the office staff was calling inquiring about vision services on a patient. Upon receiving the notification of termination, I immediately asserted my rights to appeal the termination decision on February 6, 2020. I then received the recent notice of termination on April 8, 2020.

VSP's Provider Manual states as follows:

"A written determination ("PDR Determination") stating the **pertinent facts** (emphasis added) and explaining the reasons for the determination shall be issued within forty-five (45) working days after the receipt of the Contest/Denial or amended Contest/Denial. A PDR Determination shall be final unless the provider requests a Peer Review Hearing as more fully set forth below."

I was accused in the April 8, 2020 VSP letter by Dr. Reynolds of not maintaining my license in good standing. In fact, I have complied with the Massachusetts and New Hampshire Consent orders. At the present time, the only provision of the Massachusetts Consent order that is waiting completion is the Lifeguard practice audit, which is stayed pending the COVID-19 emergency. I was subject to a simple reprimand and what was termed a modification by New Hampshire, although careful reading of the language shows any reader that there is no restriction of any privilege and also shows that these actions are what is required on any patient.

No concealment of material facts by not reporting the Massachusetts Consent Agreement occurred as I was in communication the very same day (July 29, 2019) with VSP that I received the executed Consent agreement.

VSP also bases its decision on four medical malpractice cases. In fact, two of the cases (Morrow and Kelley) have been declared a nonsuit after successful motions for nonsuit by the New Hampshire Superior Court. Therefore, the decision by VSP is faulty and in effect is based on one case and a settlement of a second case . recommended by counsel so as not to have a potentially public case once again.

I improperly have not been afforded an opportunity to appeal VSP's termination decision. The termination process has been faulty from the first correspondence in August 2019. The decision was based on incomplete data and/or data that was overlooked by the reviewer, Dr. Reynolds. Further, I was never informed by VSP of its recommendation to terminate its affiliation with me in November 2019. The questions asked in the correspondence from VSP were both overly broad and did not indicate there were specific issues that needed to be addressed in the conclusion for termination on April 8, 2020. No clarification was ever asked by the reviewer, Dr. Reynolds. The pertinent facts in this case were either overlooked, not clarified by VSP, misinterpreted, or grossly ignored. Therefore, VSP's actions can only be considered arbitrary and capricious and would not be able to withstand a Motion for Injunctive and/or Declaratory Relief brought on behalf of me. Because of this faulty review and failure to adhere to its own regulations and the principle of good faith and fair dealing, I have no confidence in a panel review by VSP and would ask VSP to please reconsider its position.

The money damages in this case amount to $4,000,000.00 as I receive many patients through VSP and follow up for medical conditions from these patients. This, in conjunction with a public NPDB report, will certainly lead to even further damages with credentialing with other insurers and hospitals. Any such report would be defamatory.

Further, even though Massachusetts has canceled any need for CME credits in this current reporting cycle because of the COVID-19 crisis, I have gone above any beyond what is expected by completing 51.75 hours of CME credit after their declaration on April 2, 2020 that all CME reporting for the calendar year 2020 is currently forgiven. (See attached) I also am attaching Dr. Haddad's report once again which shows Dr. Lee observed me surgically and found compliance with the standard of care. Any accusation by VSP that I am a threat to their patients is unfounded and libelous. Also, at no point was any VSP patient involved in any malpractice or regulatory action.

of my affiliation with VSP and permits me to appeal the termination in compliance with its own Rules and Regulations through arbitration once the COVID-19 crisis is over and permits safe cross-country travel by me to fly to Sacramento, CA or in the alternative, suit in a Massachusetts Court; (3) No reporting to the NPDB shall be made as this VSP determination is based on a determination from faulty fact finding; (4) If VSP does revoke me from participation in its panel, reimbursement to me of $4,000,000.00 in money damages. The failure to provide such relief will unquestionably result in actual monetary damages to be suffered by me, which can be doubled or trebled due to VSP's past and continuing willful violation of the statute. Further, the finding of such a c.93A violation will expose VSP to both attorneys' fees and costs.

I strongly advise you to forward this correspondence to your counsel. I look forward to attempting to reach an amicable resolution of this dispute within the next thirty (30) days. If not, I expressly reserve my right to pursue any and all avenues to obtain equitable redress and economic damages arising from the VSP's tortious conduct and contractual breaches, including those not specifically set forth herein. I also am forwarding this matter to my counsel directing him to file suit in Massachusetts Superior Court if we are unable to come to a speedy resolution of these matters. This letter in no way waives my right to file suit in Court. Please let me know if you are amenable to an acceptable resolution to both parties.

Very truly yours,

Adam P, Beck, M.D.

April 15, 2020

Re: Adam Beck Termination from VSP

Dear Ms. Trammell,

I wanted to follow up on your recent correspondence. To clear up any possible ambiguity, I am **not** waiving my right to litigate this case in Massachusetts Superior Court as the some of the potential claims in this case fall under the Massachusetts Consumer Protection statute, M.G.L. ch. 93a, as well as involve VSP's breach of its own Agreement. Case law and the Agreement itself allow for a lawsuit as a potential remedy. I will withhold my decision of whether to arbitrate versus litigate in Court depending on VSP's response to my 93a demand letter and any settlement proposal. Notwithstanding that, and given the current COVID-19 crisis which would drastically impair my ability to defend myself in California, I hope that we can work through these issues short of either of these options by keeping me on the VSP panel and avoiding the need for any further intervention. Please let me know if this is a possibility as any agreeable settlement would include continuing to allow me to remain on the VSP panel and dropping the necessity of a third party to rule on this matter.

Regards,

Adam Beck, M.D.

---------- Forwarded message ----------
From: **Nicole Wasylkiw** <nicole.wasylkiw@vsp.com>
Date: Monday, April 20, 2020
Subject: April 15, 2020
To: Adam Beck <dradambeck2010@gmail.com>

Dr. Beck –

Thank you for your email. Just to be clear on my role, I solely represent VSP. I assisted VSP in preparing its response to your appeal but had no role in the decision that was rendered in the first place by the Credentialing Committee or in the most recent final determination letter which was rendered by a third party VSP doctor. As of today's date, your termination was instituted as a result of a review by not only the VSP Credentialing Committee and Optometry Director, but also by this third party case reviewer doctor. I personally cannot overturn that decision which is why we have a Dispute Resolution Procedure in place. You have availed yourself of the first level of review and you now have the opportunity to go to Peer Review before a panel of three doctors or directly to arbitration. It appears you have selected to go straight to arbitration which is of course your right.

Also, on several occasions now you have threatened to take this to court. I want to be sure you understand that you agreed in your Network Doctor Agreement, directly above your signature block, that arbitration is binding and that it is the sole method of resolving any dispute with VSP. While you can absolutely attempt to bring a court action, it will be met with opposition based on your NDA. Please also keep in mind that your agreement also includes an attorneys' fees provision. I strongly recommend you seek the advice of counsel before making any decision on how to handle this.

In regard to your assertion below that the decisions to terminate you was based on a negligent review, if you have information or documentation to support this allegation, I am happy to review. What was reviewed by all the parties mentioned above was your NPDB report, information you provided in your CAQH report, along with your appeal and VSP's response to your appeal. The decision was rendered based on this information. Your failure to adequately explain the issues is not VSP's failure. What VSP sees are several settlements, quality of care issues and multiple malpractice actions. Also, that fact that two cases were adjudicated nonsuits is a procedural issue. That is not a factual adjudication. You seem to have some legal background and/or knowledge so I am sure you are aware of what a nonsuit is and what it means. In any case, if you have documentation detailing why those cases were adjudicated as nonsuits, please share those with me. While ordinarily you would be directed to present this in your further appeal, I am happy to review that information if it has any bearing on whether you engaged in quality of care issues.

What VSP sees in all of these cases is a pattern of quality of care issues. This is not a one-off case. Nonsuit or not, settlement or not, multiple patients have raised serious concern with the care that they received by you. That gives VSP concern and VSP must ensure that its members are adequately taken care of by its network doctors.

If you have additional documentation to support that there was a negligent review by VSP and also further details as to the reasons for the nonsuits, in the form of documentation as to why this occurred, please send what you have over to me and I will review. As I am working from home, please send by email as I will not have access to my mail on a daily basis.

Thank you,

Nicole Wasylkiw
— ™ Corporate Counsel | VSP Vision Care | Office of the General Counsel | 3333 Quality Drive, Rancho Cordova, CA 95670
| www.vsp.com | ( 916.858.5795 |
<image001.png>
916.812.5381 | 7  916.858.7983 | * nicole.wasylkiw@vsp.com | — ™

April 27, 2020

To: Nicole Wasylkiw, VSP Counsel

Nicole.wasylkiw@vsp.com


Re: Follow up to recent communication

VIA EMAIL


Dear Ms. Wasylkiw,

Thank you for the response. The contract that VSP presented to me was a contract of adhesion. In addition, there exists a fraud in the inducement claim that I will pursue if this case cannot be resolved amicably.

If we are unable to come to an acceptable resolution, I would argue that venue is proper in Massachusetts in this case based on not only the above facts, but in addition the M.G.L. ch. 93a consumer protection act affords plaintiffs broad ability to argue these cases in this jurisdiction. In addition, in researching the case law, California and Massachusetts have found mandatory arbitration clauses to be non-binding. Extensive discovery would need to be done under the Rules of Civil Procedure to give me a fair opportunity to present my case. With the negligent reviews in this case, I will not be afforded a fair opportunity for discovery with the VSP reviewers without the Court's assistance as we are both aware of the limitations in discovery with arbitration. Furthermore, I would highlight that there is potential exposure on the part of the reviewers in this case with their appropriate overseeing administrative agencies based on their negligent and frankly unethical review and acting outside the scope of their practice in commenting on retinal surgeries.

As you are aware, terminating me would have not only lead to the immediate loss of VSP patients, but it would most likely trigger a chain reaction with other insurers with a NPDB report. Such a report is unfair and highly prejudicial to me as this determination was based arbitrarily and capriciously by VSP and its reviewers, and without proper facts.

In response to your question about the nonsuits, I have had two successful motions for nonsuits. Please review the attached correspondence. Frankly, these were

copycat plaintiffs with meritless claims who wished to have a potential payday following a public Knox verdict. Their suits were unfounded and potentially would have subjected their clients to costs as well as sanctions against counsel. One of the clients tried to turn his disability claim into a claim against me and the other patient saw a retina surgeon in Florida, had a poor outcome in a surgical procedure with him, and attempted to file a claim against me years after her own · statute of limitations had expired against any doctor. The motions for nonsuit were assented to by their counsel. These claims certainly should not be held against me. That is patently unfair. I also have performed many hours of CME's to show my continued commitment to quality patient care, including even performing recent CME's where the Massachusetts Board of Registration in Medicine ruled on April 2, 2020 that CME's would not have to be done this year for license renewal prior to December 31, 2020 because of the COVID-19 crisis.. (see attached)

In this time of COVID-19, I don't think it is in the best interests of anyone to create a protracted litigation. I am on the front lines trying to deal with patient care. I am one of the very few Ophthalmologists in northern Massachusetts even willing to currently see patients. VSP insures routine visits of patients. I am not clear as to the reasoning of how I am a "risk" to VSP's routine patients, nor am I clear how an optometrist reviewer is able to criticize a completely different specialty than his own, particularly based on an incomplete and cursory review. I still maintain an active medical license. I still am able to perform my retinal surgeries unimpeded at the local hospitals. In fact, I have been observed surgically recently by Dr. Lee, who is a competitor, and found to work well within the standard of care. (see attached)

I am hopeful that VSP will drop this action forthwith and continue our relationship. Please let me know if this is possible.

Regards,

Adam Beck, M.D.

June 26, 2020

VSP Credentialing Committee

Attn: Melanie Trammell

3333 Quality Drive

MS 163

Rancho Cordova, CA 95670

melanie.trammell@vsp.com

RE: Termination from VSP

SENT VIA MAIL AND CERTIFIED MAIL RETURN RECEIPT REQUESTED

Dear Ms. Trammell:

Please be advised that I am in receipt of your correspondence dated June 18 ,2020 which purported to revoke my affiliation with Vision Service Plan (hereinafter "VSP"). Kindly allow this correspondence to serve as a secondary request for reconsideration and/or an appeal of the VSP's decision to obviate the necessity of judicial intervention. If no such reconsideration is available, then I am invoking my right to a hearing with the reviewing doctors to be appointed by me.  In light of the arbitrary and capricious manner VSP's review and actions have been to date, I see

no possible fair review that can occur by VSP appointing the reviewers without input from me. Nowhere in the VSP provider manual does it indicate that I may not have a say in appointing a reviewer(s). Moreover, I have attached recent submitted complaints regarding the expert witness testimony in my medical malpractice/board actions. These have been submitted to both the American Board of Ophthalmology and American Academy of Ophthalmology. A careful reading of these by a reviewer will demonstrate that I have been unfairly targeted by their unethical testimony. I would ask for you to have the reviewer kindly evaluate these complaints. Moreover, for almost a year, we have been talking about something that occurred four years ago, where my primary hospital affiliation, Lawrence General Hospital, conducted an on-site review of me with monitoring of patients post the initial review and found that I was a competent ophthalmologist. For VSP to suggest otherwise, without truly reviewing and understanding the facts of the expert witness testimony in my case, is unfair, deceptive, defamatory, unethical, and subjects VSP to potential liability in a Massachusetts Court. The facts of the settlement agreement and the reciprocal disciplinary agreement have been discussed at length. I see no reason why VSP is taking this unilateral action, particularly in light that the VSP patient's aren't even undergoing procedures in my practice. They are routine visits, without ocular pathology, and which poses almost no potential liability to either myself or VSP.

Notwithstanding this, I sent a M.G.L. ch 93A letter to you on April 9, 2020. Under Massachusetts law, the consumer protection act invalidates arbitration clauses. With respect to consumer concerns, in 1982, the Supreme Judicial Court declared that the Massachusetts Consumer Protection Act, Chapter 93A, prohibited compelling a consumer plaintiff to arbitrate a Chapter 93A claim. Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813 (1982). Later, in McInnes v. LPL Financial LLC, 466 Mass. 256, 265 (2013), citing Granite Rock Co v. International Bhd. of Teamstears, 130 S. Ct. 2847, 2856 (2010), the SJC confirmed that a "court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." McInnes v. LPL Financial LLC, 466 Mass. 256, 265 (2013), citing Granite Rock Co v. International Bhd. of Teamstears, 130 S. Ct. 2847, 2856 (2010). Here, we did not agree to arbitrate the consumer protection issue.

In our case, we have not yet agreed to arbitrate our dispute. Moreover, in light of COVID-19, I don't feel that a fair in-person hearing with either a panel or an arbitrator can occur. There is a Massachusetts consumer protection issue at play in this case which, if we are unable to resolve this dispute, will need to be litigated in

a Massachusetts Court so that I can have a fair judgment.  VSP has ample notice

and  opportunity to hire a Massachusetts attorney to defend such an action here,

which would not prejudice my rights by not being able to attend in-person.


If litigated, this case would involve claims for a breach in the implied conduct of

good faith and fair dealing, negligence, defamation, and a consumer protection

violation under M.G.L ch. 93A, among other claims.  This case belongs in a

Massachusetts Court as it was not only an adhesion contract, but there is a claim

for fraud in the inducement, among other claims.


Therefore, at this time, I would ask you once again to please consider the attached

expert witness testimony and request for sanctions against these witnesses.  In

Nicole Wasylkiw's correspondence from May 4, 2020, she states the following:

"More importantly in regard to your response, can I ask why this was not

previously shared? You consistently blame VSP for not providing a thorough

review of your records cited to inapplicable law in support, yet you did not share

this with us before? We can only review what we've been provide with. The onus

is on you in that regard to be sure we have all the information we need to make an

informed decision. Don't you think providing information about the nonsuits being

dismissed with prejudice would have been beneficial to our analysis at the onset when it was first discovered rather than months later? While I am not in the least obligated to share this NEW information with the Committee, as it should have been provided at the onset, I want to be sure that they are aware to give them an opportunity to have ALL the facts in front of them. As such, based on this NEW information, your current arbitration appeal will be stayed pending my request for reconsideration. I have cc'd the appeal administrator."

The expert witness testimony has been submitted for review to the American Academy of Ophthalmology and American Board of Ophthalmology at the advice of counsel. This are recent filings and would assist VSP in seeing the gross level of misconduct in this case.

As I have previously indicated, it is patently unfair that one adverse civil judgment and subsequent Settlement Agreement should lead to my termination from the VSP Network and that VSP failed to comply with its own Rules and Regulations. Clearly, I have incurred and will continue to suffer damages, including, but not limited to economic harm relating to degradation of

my professional reputation and loss of business opportunities, due to the VSP's unilateral action.

To reiterate my April 8, 2020 letter to VSP, pursuant to the express provisions of the VSP's Provider Manual and Contract with me as well as Massachusetts General Laws Chapter 93A, §§§ 2, 9 and 11, I reiterate my demand for injunctive relief on account of the unfair and deceptive acts or practices committed in connection with VSP's unlawful revocation of my affiliation with VSP. Furthermore, I have suffered monetary damages and will continue to do so in this matter.

On or about July 29, 2019, I communicated with Jeff Vellenga from VSP about a Massachusetts Board of Registration in Medicine Consent Order in which I had entered. The executed Consent order was received by me from the Massachusetts Board of Registration in Medicine on July 29, 2019. On August 1, 2019, I submitted initial communication of the Consent order to VSP. I submitted further correspondence to clarify in early August 2019 and was initially terminated by VSP on August 9, 2019. I then communicated with Ms. Trammell and requested an appeal on or about September 3, 2019. On October 8, 2019, VSP then

communicated again via a letter from Ms. Noguchi asking for clarification on a settlement for patient David Smalley for which I replied on October 15, 2019. No mail, certified letter, or email was then sent prior to my message to Ms. Myers from VSP on January 29, 2020 after my office received notification that my credentialing would be terminated on February 6, 2020 when the office staff was calling inquiring about vision services on a patient. Upon receiving the notification of termination, I immediately asserted my rights to appeal the termination decision on February 6, 2020. I then received the recent notice of termination on April 8, 2020.

VSP's Provider Manual states as follows:

"A written determination ("PDR Determination") stating the pertinent facts (emphasis added) and explaining the reasons for the determination shall be issued within forty-five (45) working days after the receipt of the Contest/Denial or amended Contest/Denial. A PDR Determination shall be final unless the provider requests a Peer Review Hearing as more fully set forth below."

I was accused in the April 8, 2020 VSP letter by Dr. Reynolds of not maintaining my license in good standing. In fact, I have complied with the Masschusetts and New Hampshire Consent orders. At the present time, the only provision of the

Massachusetts Consent order that is waiting completion is the Lifeguard practice audit, which is stayed pending the COVID-19 emergency. I was subject to a simple reprimand and what was termed a modification by New Hampshire, although careful reading of the language shows any reader that there is no restriction of any privilege and also shows that these actions are what is required on any patient.

No concealment of material facts by not reporting the Massachusetts Consent Agreement occurred as I was in communication the very same day (July 29, 2019) with VSP that I received the executed Consent agreement. VSP bases its decision impart on this statement.

VSP also bases its decision on four medical malpractice cases. In fact, two of the cases (Morrow and Kelley) have been declared a nonsuit after successful motions for nonsuit by the New Hampshire Superior Court. I previously have submitted these accepted pleadings. Therefore, the decision by VSP is faulty and in effect is based on one case and a settlement of a second case recommended by counsel so as not to have a potentially public case once again. I improperly have not been afforded an opportunity to appeal VSP's termination decision. The termination process has been faulty from the first correspondence in August 2019. The decision was based on incomplete data and/or data that was overlooked by the reviewer, Dr.

Reynolds. Moreover, I am sure neither Dr. Reynolds nor any reviewer took the time to see the gross level of misconduct that occurred in the expert witness testimony in this case.  It is now outlined quite specifically for VSP to see.  A careful review of this material will show the detailed and calculated misconduct by the expert witness reviewers.  Further, I was never informed by VSP of its recommendation to terminate its affiliation with me in November 2019. The questions asked in the correspondence from VSP were both overly broad and did not indicate there were specific issues that needed to be addressed in the conclusion for termination on April 8, 2020. No clarification was ever asked by the reviewer, Dr. Reynolds. The pertinent facts in this case were either overlooked, not clarified by VSP, misinterpreted, or grossly ignored. Therefore, VSP's actions can only be considered arbitrary and capricious and would not be able to withstand a Motion for Injunctive and/or Declaratory Relief brought on behalf of me.

The money damages in this case amount to $4,000,000.00 as I receive many patients through VSP and follow up for medical conditions from these patients. This, in conjunction with a public NPDB report, will certainly lead to even further damages with credentialing with other insurers and hospitals. Any such report would be defamatory.

Further, even though Massachusetts has canceled any need for CME credits in this current reporting cycle because of the COVID-19 crisis, I have gone above any beyond what is expected by completing 50 hours of CME credit after their declaration. (See attached) I also am attaching Dr. Haddad's report once again which shows Dr. Lee observed me surgically and found compliance with the standard of care. Any accusation by VSP that I am a threat to their patients is unfounded and libelous. Also, at no point was any VSP patient involved in any malpractice or regulatory action.

The above-described conduct by the VSP amounts to more than a clear breach of contract. As detailed above, the facts demonstrate that there is the basis for a claim sounding in a breach of the implied covenant of good faith and fair dealing. As such, while an ordinary breach of contract action may not be sufficient to prove a violation of Chapter 93A, a breach of the implied covenant of good faith and fair dealing may be sufficient. See Mass. Employers Ins. Exch, v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995); Cherick Distribs. v. Polar Corp., 41 Mass. App. Ct. 125, 128 (1996).

I have been a long-standing provider for VSP. It is patently unfair that one adverse civil judgment and subsequent Settlement Agreement should lead to my

termination from the VSP Network and that VSP failed to comply with its own Rules and Regulations. Clearly, I have incurred and will continue to suffer damages, including, but not limited to economic harm relating to degradation of my professional reputation and loss of business opportunities, due to the VSP's unilateral action.

Pursuant to M.G.L. c. 93A, § 11, any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring an action in the superior court... for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper. Such person, if he has not suffered any loss of money or property, may obtain such an injunction if it can be shown that the aforementioned unfair method of competition, act or practice may have the effect of causing such loss of money or property.

As a result of the damages already suffered by me to my professional reputation and business relationships, and continuing ongoing damages, a demand for the

following injunctive and monetary relief is made: (1) that the VSP immediately reinstate my affiliation with VSP and has the reviewer carefully examine the attached letters requesting sanctions against the expert witnesses in my case ; (2) In the alternative, VSP stays the termination of my affiliation with VSP and permits me to appeal the termination in compliance with its own Rules and Regulations through an in-person hearing with my assistance in choosing the reviewer(s) once the COVID-19 crisis is over and permits safe cross-country travel by me to fly to California; (3) No reporting to the NPDB shall be made as this VSP determination is based on a determination from faulty fact finding; (4) If VSP does not revoke my termination from its panel, reimbursement to me of $4,000,000.00 in money damages; (5) Providing me the names and affiliations with VSP of the reviewer(s) to date in this case.

Without my input in selection of the reviewer(s), based on the unfair treatment I have seen to date, I can only assume that there will be communication by VSP to these reviewers with the intent to terminate me.

The failure to provide such relief will unquestionably result in actual monetary damages to be suffered by me, which can be doubled or trebled due to VSP's past and continuing willful violation of the statute. Further, the finding of such a c.93A violation will expose VSP to both attorneys' fees and costs.

I strongly advise you to forward this correspondence to your counsel. I look forward to attempting to reach an amicable resolution of this dispute within the next thirty (30) days. If not, I expressly reserve my right to pursue any and all avenues to obtain equitable redress and economic damages arising from the VSP's tortious conduct and contractual breaches, including those not specifically set forth herein.

Very truly yours,

Adam P, Beck, M.D.

**Nicole Wasylkiw**

to me, Melanie

Jul 2, 2020,
4:06 PM

I will share this information with the provider network team. They can ask the committee
if they provide another review.

Nicole Wasylkiw

**From:** Adam Beck <dradambeck2010@gmail.com>
**Sent:** Thursday, July 2, 2020 1:01 PM
**To:** Nicole Wasylkiw <nicole.wasylkiw@vsp.com>
**Cc:** Melanie Trammell <melanie.trammell@vsp.com>
**Subject:** Re: [EXT] VSP request for reconsideration

Nicole,

Please take a look at the documents and see what you can do.  If you really look at all
of them and explain it to whomever this reviewer is, I would hope that would show what
really happened here.

Regards,

Adam

On Thu, Jul 2, 2020 at 3:46 PM Nicole Wasylkiw <nicole.wasylkiw@vsp.com> wrote:
Dr. Beck –

I can review what you sent but I don't have control over the decision that was reached
by the credentialing committee. Further, you did not advise in any of your
communications as to when these documents were prepared nor have I had time to
look at them. I also want to address your repeated claim that VSP has conducted a
negligent review of your case yet we keep getting piecemeal documentation from you.

In any case, as I mentioned in an earlier email, I will share with provider network and
they can determine whether the committee will be conducted a THIRD review of your
case which it is not obligated to do. If not, your only option will be peer review or
arbitration. I know you have requested arbitration, but I truly believe that your case
would be much better argued and presented by you to a panel of your peers rather than
a non-OD arbitrator.

Nicole Wasylkiw

**From:** Adam Beck <dradambeck2010@gmail.com>
**Sent:** Thursday, July 2, 2020 11:54 AM
**To:** Nicole Wasylkiw <nicole.wasylkiw@vsp.com>

**Cc:** Melanie Trammell <melanie.trammell@vsp.com>
**Subject:** Re: [EXT] VSP request for reconsideration

Nicole,

How was I supposed to submit information to you that wasn't submitted by me to the American Board of Ophthalmology and American Academy of Ophthalmology until the last few weeks?

Also, I believe the testimony of these experts, if they are part of VSP, should be reviewed as well. I would encourage you to take a look at the complaints. They lay out the gross inconsistencies and deliberate unethical testimony in great detail.

Regards,

Adam Beck

On Thu, Jul 2, 2020 at 2:47 PM Nicole Wasylkiw <nicole.wasylkiw@vsp.com> wrote: The reviewer that I requested reconsideration to is the credentialing committee and I'm not sure that they will look at more documents. This will now be their third time. I'll refer this back our provider network team to see but I'm not hopeful. This all outside of normal process. We have a dispute process in place for this very reason. This information should have been submitted at the onset when you appealed the initial decision. In any case, I will defer to the provider network team and let you know. If they say no, your next best bet will be to have this reviewed by the peer review panel through the standard due process procedure.


Nicole Wasylkiw

**From:** Adam Beck <dradambeck2010@gmail.com>
**Sent:** Thursday, July 2, 2020 10:11 AM
**To:** Nicole Wasylkiw <nicole.wasylkiw@vsp.com>
**Cc:** Melanie Trammell <melanie.trammell@vsp.com>
**Subject:** Re: [EXT] VSP request for reconsideration

Nicole,

Will the reviewer please take a look at the new materials? These documents were recently submitted to both the American Academy of Ophthalmology and American Board of Ophthalmology. What is the name of the reviewer and the relationship to VSP? I believe the testimony and supporting documents submitted, if read thoroughly, will show the completely unethical testimony in my case by some of the experts and that I never deviated from the standard of care. It really takes quite a bit of time to sit and go through them, but if done, will explain how we arrived here.

The rest of the letter is pretty self-explanatory.  Please let me know if the reviewer will look at this material before we need to move forward,

Regards,

Aadm Beck

On Thu, Jul 2, 2020 at 1:03 PM Nicole Wasylkiw <nicole.wasylkiw@vsp.com> wrote: Dr. Beck - both received by me. What are you asking for in regard to these documents? Why weren't these previously shared? As I mentioned my request for reconsideration to the committee was not a required step in this process and at this juncture you can go to peer review with this new information or to arbitration.

Please advise on what you would like to do.

Thanks, Nicole

Nicole Wasylkiw

**From:** Adam Beck <dradambeck2010@gmail.com>
**Sent:** Thursday, July 2, 2020 9:33 AM
**To:** Melanie Trammell <melanie.trammell@vsp.com>; Nicole Wasylkiw <nicole.wasylkiw@vsp.com>
**Subject:** [EXT] VSP request for reconsideration

Dear Ms. Trammell and Wasylkiw,

Please see the attached correspondence.

Separately, I will share a Google Drive which has supporting documents to this letter, as well as complaints recently submitted to the American Academy of Ophthalmology and American Board of Ophthalmology against the expert witnesses on my case.  Please have the reviewer see these.  They speak for themselves as to the completely unethical testimony that has occurred in my case.

Please let me know that you have received both emails with attachments today.

Regards,

Adam Beck, M.D.
NOTICE: This message is intended only for the individual to whom it is addressed and may contain information that is confidential or privileged. If you are not the intended recipient, or the employee or person responsible for delivering it to the intended

recipient, you are hereby notified that any dissemination, distribution, copying or use is strictly prohibited. If you have received this communication in error, please notify the sender and destroy or delete this communication immediately.